**William L. CLARK**

v.

**RESISTOFLEX COMPANY, et al.**

Civ. A. No. 86–135–B.

United States District Court,
M.D. Louisiana.

July 31, 1987.

G. Phillip Shuler, Donna J. Dew, New Orleans, La., for plaintiff.

Keith M. Pyburn, Jr., McCalla, Thompson, Pyburn & Ridley, New Orleans, La., for defendants.

POLOZOLA, District Judge.

This suit was filed by the plaintiff, William L. Clark, under the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"). Named as defendants in this suit are Resistoflex Company, a division of

Unidynamics Corporation and its successor Crane Resistoflex Company, a Division of Crane Co. ("Resistoflex")[1] This matter is now before the court on defendant's motions for summary judgment. Resistoflex contends that plaintiff's suit under the ADEA is time barred. Resistoflex also contends that plaintiff's claim under the Employee Retirement Income Security Act, 29 U.S.C. § 1140 ("ERISA") is not supported by the law and should be dismissed.

## I. The Age Discrimination Claim

The plaintiff was born on August 18, 1936 and worked for Resistoflex for twenty-four years before he was terminated. At the time of his termination, plaintiff was 48 years old.

Resistoflex manufactures and distributes materials used to prevent corrosion in such items as liners in pipes, valves and fittings of various sorts which are used to carry and transport corrosive materials. Resistoflex employs sales persons to assist and support the distributors of their product. Plaintiff was terminated in March of 1985. At that time, the defendant employed three persons it classified as Regional Sales Managers: the plaintiff, who was then 48 years old; Fred Mashin, who was 50 or 51 years old; and, C. Jay Wangerin, who was 63 years old. Plaintiff was the Southern Regional Sales Manager of a territory that included Louisiana, Arkansas, Mississippi, and parts of Texas, Alabama, Georgia and Florida. The responsibility of the Regional Sales Manager was to supervise the local salesmen. The plaintiff did not have any direct sales duties. In addition to the base salary he received, he also received a commission on the sales of his district sales managers.

Two questions must be answered by this court in determining whether to grant the defendant's motion for summary judgment on the ADEA claim. First, under the criteria set forth in *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) and *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), when did the alleged discriminatory act or practice occur in order to start the 180-day limitation period for filing a claim with the Equal Employment Opportunity Commission ("EEOC")? Second, if the 180-day period expired before the plaintiff filed a claim with the EEOC, was the period tolled or interrupted for any reason.

### A. When did the alleged act of discrimination occur?

▮ The plaintiff received a telephone call on March 11, 1985 from Bruce Freed, the General Sales Manager of Resistoflex, who was plaintiff's immediate supervisor. Freed informed Clark that he was to be terminated and plaintiff's last day on the job would be Friday, March 15, 1985.[2] Plaintiff does not remember all of the details of the conversation but does remember that Freed said: "I have some bad news for you … I am going to terminate you."[3] Freed's affidavit has a slightly different wording. Freed maintains that he told the plaintiff that "[h]e was terminated[.]"[4]

During the telephone conversation of March 11, 1985, plaintiff was also informed of some of the reasons why the company was terminating him.[5] Plaintiff has testified that he was in a state of shock and after approximately five minutes, he did not wish to speak with Freed any longer. At plaintiff's request, the conversation

---

**1.** Resistoflex Company was a division of Unidynamics Corporation and is now owned by Crane Co. All facts about the structure of the company and employees other than Clark are taken from Exhibit G of the defendant's motion, statement and background. This exhibit is attached to the affidavit of Daniel A. Rizzi of Townley and Updike, New York, attorneys for the defendant.

**2.** Deposition of plaintiff, pages 84–86; affidavit of Bruce A. Freed, General Sales Manager for

Resistoflex, section 3, attached as exhibit F to the affidavit of Rizzi; affidavit of plaintiff, section 7, attached as exhibit D to the plaintiff's opposition.

**3.** Deposition of plaintiff, page 85, lines 20–24.

**4.** Affidavit of Bruce Freed, section 3(v), attached as exhibit F to the affidavit of Rizzi.

**5.** Deposition of plaintiff, pages 86–88; affidavit of Freed.

with Freed terminated and Clark was transferred to personnel in order to learn of his termination benefits.[6]

The plaintiff's memory of the reasons that Freed gave for his termination is sketchy at best.[7] However, Freed states that he informed Clark that: (1) he was a poor role model; (2) he had used business time for leisure activities; (3) Freed had received complaints about Clark's conduct; and, (4) plaintiff resisted new procedures. Freed indicated that plaintiff was terminated for those reasons.[8] Plaintiff does not deny that Freed mentioned all of the above items. Plaintiff merely states that he was in a state of shock and does not clearly remember all of the conversation. However, Clark did state that he thought age was the real reason he was terminated.[9]

On March 15, 1985, Clark received a letter dated March 12, 1985 from Tom Brath, personnel director, which outlined the benefits plaintiff would receive from the company.[10] Clark signed the letter that day and returned it to the company.

Under the terms of the agreement contained in the letter of March 12, 1985, the plaintiff was to be given severance pay of $20,060.36, which was to be paid in 11 semi-monthly installments of $1,823.66 each. Certain health benefits were to be continued until August 31, 1985, while other health benefits would terminate on March 15. Plaintiff was fully vested in his pension plan, but the amount of his pension benefits were not disclosed in the letter.

The last paragraphs of the letter agreement contain the heart of the agreement as far as Resistoflex is concerned. Under the agreement plaintiff was prohibited from communicating any "proprietary information" in any form to any other party. If this obligation was violated, the company

had the right to terminate the agreement. Another paragraph stated that all other benefits of employment were terminated and any unused vacation time would be included in plaintiff's last paycheck.

It is clear that the plaintiff signed the letter agreement under Brath's signature on March 15, 1985, the plaintiff's last day of work.

It is now settled law that a cause of action accrues in the age discrimination context when the adverse employment decision is made and communicated to the employee. *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Elliot v. Group Medical and Surgical Service,* 714 F.2d 556, 563 (5th Cir.1983); *McWilliams v. Escambia School Board,* 658 F.2d 326, 328 n. 1 (5th Cir.1981); *Hammock v. American Pad and Paper Co.,* 41 F.E.P. Cases 1598, 1599 (E.D.Wis.1986) [Available on WESTLAW, DCT database]. Even if employment continues after notice, the time period begins to run from the date of notice. *Chardon, supra,* 454 U.S. at 8; 102 S.Ct. at 29; *Ricks, supra,* 449 U.S. at 257–58; 101 S.Ct. at 503–04. The proper focus under the *Ricks* rationale is on the time of the act of discrimination and not when the consequences of that act become most painful. *Ricks, supra,* 449 U.S. at 258; 101 S.Ct. at 504.

A review of the facts presented to the court reveals that the decision to terminate the plaintiff was communicated to the plaintiff on March 11, 1985.[11] The fact that plaintiff was employed until the 15th of March does not effect the accrual of the cause of action. Plaintiff was on notice that adverse employment action had been

---

**6.** Deposition of plaintiff, pages 88–89.

**7.** See footnote 5.

**8.** Affidavit of Bruce Freed, sections 3(i)–(iv).

**9.** Deposition of plaintiff, page 77.

**10.** Exhibit B to the Rizzi affidavit. The contents of this letter becomes relevant during the discussion of equitable estoppel. It is mentioned

here since it also is relevant to the issue of notice.

**11.** Communication of the decision can be either oral or written as long as the notice is sufficiently clear to put a reasonable person on notice that adverse employment action has taken place. *McWilliams v. Escambia County School Board,* 658 F.2d 326 (5th Cir.1981); *Hammock v. American Pad & Paper Co.,* 41 F.E.P. Cases 1598; 1599 (E.D.Wis.1986).

taken against him when he received the phone call from Freed on March 11.

In opposition to defendant's motion for summary judgment, the plaintiff argues that this March 11, 1985 notice was not clear and unequivocal. Plaintiff claims this lack of clear notice coupled with the fact that the company had threatened to terminate him in the past made his status with the company unclear. The plaintiff asserts that the letter of March 15 should be considered the termination date since it was not until that time that the plaintiff knew for certain that he was terminated.

This court finds plaintiff's argument untenable. The relevant inquiry by the court is not on the subjective state of mind of the plaintiff,[12] but rather on the sufficiency of the notice plaintiff received. Freed did not tell the plaintiff that he "might" terminate or that he was "thinking of" terminating plaintiff's employment. Instead, Freed told the plaintiff that he was going to terminate the plaintiff.[13] It is clear that at this point a decision had been reached by the company to discharge the plaintiff. If any act of discrimination occurred, it occurred before the phone call of March 11. The affidavit of Brath clearly states that while no approval was needed from his department, he did discuss the termination of plaintiff before March 11 with Freed and Rovdane, the president of the company, and any approval necessary was given at that time.[14] Again, it is clear that the decision was made before the call of March 11 and that this telephone call served as the notice which started the period for filing a claim with the EEOC.

It is not necessary for this court to find that the defendant's decision to terminate the plaintiff was irrevocable. Only the fact that the decision to terminate was made is relevant. In other words, the fact that the plaintiff may be successful in changing the minds of those who dismissed him or may have some other course of action to persuade the company to reverse its decision does not change the fact that an act of discrimination had occurred. Such a possibility does not suggest that the decision to terminate is in any way tentative. *Ricks, supra,* 449 U.S. at 261; 101 S.Ct. at 505–06. Such a possibility is "a remedy for a prior decision, not an opportunity to influence that decision before it is made." *Ricks, supra, Id.* Therefore, the 180 days is not tolled during the existence of such a possibility.

The court has carefully studied the decisions rendered in the *Ricks* and *Chardon* cases. The language of these cases convinces this court that since the decision to terminate was made and unequivocally communicated to the plaintiff on March 11, 1985, the period for filing a claim with the EEOC began to run from the March 11 phone call. Even though all of the terms of the termination were not complete until the letter was signed on March 15, 1985, and the plaintiff was not convinced that the company would not reconsider their decision to terminate him, the alleged act of discrimination had occurred and the 180–day period had begun. Thus, plaintiff did not timely file a claim within the 180–day period with the EEOC.

### B. *Was the 180–Day Period Tolled or Interrupted?*

The court has decided that the 180–day period for filing the claim with the EEOC

---

**12.** The period begins to run when a "reasonable person" would have been put on notice of defendant's official and final decision. The test does not have a subjective component. *Linn v. Andover Newton Theological School,* 642 F.Supp. 11, 13 (D.Mass.1985); *Carpenter v. Board of Regents,* 529 F.Supp. 525, 531 (W.D. Wis.) *aff'd,* 728 F.2d 911 (7th Cir.1984).

**13.** The "going to terminate" language is the plaintiff's version of the conversation. Taking this version as true and correct, the court finds that the intention of the defendant to terminate the plaintiff should be clear to a reasonable person. This language states the official and

final position of the General Sales Manager and should have put the plaintiff on notice that he was terminated. As in *Chardon,* where the plaintiffs were told that their appointments would terminate, the meaning is clear and unequivocal. Simply because the message is couched in the future tense does not make the meaning any less clear. While the "termination" was not effective until another date, the decision to "terminate" had been made and communicated at this point.

**14.** Affidavit of Tom Brath, Jr., Vice President, Human Resources for Resistoflex, section 13.

began to run on March 11, 1985. Thus, plaintiff had until September 7, 1985 to file his claim with the EEOC. Since September 7 was a Saturday, the plaintiff had until Monday, September 9, 1985, to file his claim with the EEOC. The letter to the EEOC is stamped "received" on September 10, 1985 [15] or 183 days after the alleged discriminatory act.

■■■ 29 U.S.C. § 626 governs the investigation and enforcement of the ADEA. Subsection (d) states:

> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—
>
> (1) within 180 days after the alleged unlawful practice occurred[.]

Filing a charge under 29 U.S.C. § 626(d) is a prerequisite to an individual civil action. However, the time limits imposed by the section are not jurisdictional and the court does not lose jurisdiction if the filing of the charge with the EEOC is late. *Pruet Production Co. v. Ayles*, 784 F.2d 1275, 1279 (5th Cir.1986). The period provided for in the statute is more akin to a statute of limitations. *Pruet Production, supra.* Therefore, the time limitation set forth in section 626 is subject to tolling where equitable considerations are present. *Pruet Production, supra; Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir.1981) *en banc.*

The Fifth Circuit Court of Appeals has recently reaffirmed the test for equitable tolling to be applied in this circuit. *Pruet Production, supra.* The court stated:

> [t]he statute does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights. A corollary

of this principle, often found in cases where wrongful concealment of facts is alleged, is that a party responsible for such wrongful concealment is estopped from asserting the statute of limitations as a defense.

*Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 930 (5th Cir.1975). In this case Clark has alleged both equitable tolling and its corollary, equitable estoppel. He maintains that the defendant's failure to post the EEOC notice in the Baton Rouge office is a violation of 29 U.S.C. § 627 and 29 C.F.R. 1627.10. Therefore, he argues that the 180 days did not begin to run until he possessed actual knowledge of the right to be enforced and that occurred when he consulted with his attorneys. In the alternative, the plaintiff argues that the severance agreement was an attempt to intimidate him into not bringing the action since the company could terminate the severance pay if the agreement was violated. Plaintiff contends that this conduct of the defendant should operate to estop the defendant from asserting the defense of limitations.

### 1) *equitable tolling*

Equitable tolling is an extraordinary remedy and is only available in narrow class of cases. *Kerver v. Exxon Production Research Co.*, 40 FEP Cases 1567, 1569 (S.D.Tex.1986) [Available on WESTLAW, DCT database]. Plaintiff bears the burden of convincing the court that the facts before it warrant such relief.[16] *Taylor v. General Telephone Co.*, 759 F.2d 437, 442, 27 FEP Cases 1228, 1232 (5th Cir.1985). Tolling can be applied when it is found that the employer has failed to post the notice required by 29 U.S.C. § 627. *Elliot, supra*, 714 F.2d at 563. A review of the facts and evidence before the court reveals that the defendant posted the required notice on a bulletin board in the

---

**15.** The letter and charge filed by the plaintiff with the EEOC are attached to the deposition of Rizzi as Exhibit C.

**16.** The Fifth Circuit Court of Appeals has listed some examples of situations which will toll the 180–day period in *Espinoza v. Missouri Pacific Railroad Co.*, 754 F.2d 1247, 1251 (5th Cir.1985).

These include (1) a suit pending in state court; (2) the claimant is unaware of facts giving rise to Title VII claim; or (3) EEOC misleads the claimant about the nature of his right under Title VII. See also, *Kerver v. Exxon Production Research*, 40 FEP Cases 1567, 1569 (S.D.Tex. 1986).

company cafeteria at its headquarters in New Jersey. The plaintiff worked out of the branch office in Baton Rouge. There was no notice posted at the Baton Rouge office. The plaintiff admits knowing of the bulletin board in New Jersey and admits he had seen it on many of his trips to the main office.[17] It appears from the evidence that the plaintiff made two or three trips a year to the main office and while there, would visit the cafeteria twice daily.[18] The notice has been posted on the bulletin board in New Jersey for about ten years. This would mean that the plaintiff had between 40 and 120 opportunities to read the notices on that board. Plaintiff testified that he never took the time to look at this bulletin board.

The court is mindful of the opinion of the Fifth Circuit in *Charlier v. S.C. Johnson & Son, Inc.*, 556 F.2d 761 (5th Cir.1977) which sets forth the criteria for sufficient notice under the ADEA.

> To fulfill the purposes of section 627 and regulation 850.10 [now 1627.10], an employer's notice must provide employees with a meaningful opportunity of becoming aware of their ADEA rights that one may reasonably conclude that the employees either knew or they should have known of their statutory rights.

*Charlier, supra*, 556 F.2d at 764. The court went on to hold that employees in a branch office that visited the main office three times in 19 years were not on notice of their ADEA rights simply by the posting of the notice in the main office. However, the court remanded the case to the trial court for a determination as to the number of visits made to the main office by the district manager who had testified that he "occasionally" visited the office. The case before this court is more like the case of the district manager in *Charlier*. Therefore, a determination must be made as to the sufficiency of notice as to this plaintiff.

It is clear from the record of this case that the notice posted by the defendant on the bulletin board in the cafeteria in New Jersey was placed in such a manner that plaintiff had more than ample opportunity to see and read it over a long period of time. Even though he did not have the chance to read the bulletin board every day, his trips to the main office were sufficient in number that he should have known of his rights under the act. Therefore, this court holds that under the facts of this case, the notice posted at the main office was sufficient to comply with the posting requirements of 29 U.S.C. § 627. Plaintiff was provided with a meaningful opportunity to learn of his rights under the ADEA. Therefore, equitable tolling is not justified under the facts of this case.

As noted earlier, tolling is an extraordinary remedy and should not be used to preserve a plaintiff's case because of mere sympathy. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). Thus, plaintiff's other arguments in support of tolling are without merit.

Tolling occurs when the plaintiff is ignorant of his rights *because* of the failure to post the notice. The failure to post adequate notice will only toll the 180 days when and until the plaintiff has a general knowledge of his rights. *McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483, 1486 (11th Cir.1984). "When an employee is generally aware of his rights, ignorance of specific legal rights or failure to seek legal advice should not toll the 180-day notification period. Cf. *Quina v. Owens-Corning Fiberglass Corp.*, 575 F.2d 1115, 1118 (5th Cir.1978)." *McClinton, supra*.

The plaintiff testified that he felt from the moment he was terminated that age was the reason for the defendant's action. He contemplated filing a suit before he talked with an attorney.[19] The fact

---

17. Deposition of plaintiff, pages 76–77.

18. *Id.*

19. Q. When did you first become aware that you were discriminated against because of your age?

A. The day I was released from the company.
Q. On the day that you left, you felt you had been discriminated against because of your age?
A. That's correct.

that he knew or at least thought he had the right to sue defeats the tolling of the period. Furthermore, the fact that he did not know the specific requirements of the ADEA does not preclude the statutory period for running. *McClinton, supra.*

The last factor which precludes the application of the doctrine of equitable tolling is plaintiff's consultation with an attorney *within* the 180-day period. By the plaintiff's own testimony, he first met with his attorneys in early July, which was over two months before the filing deadline. At the very least, the plaintiff was put on notice at this time that he had certain rights under the ADEA.

The courts have taken various positions on the effect of consulting with an attorney during the 180-day period.[20] Many of these cases have held that such a circumstance prevents the plaintiff from pleading equitable tolling. *Welty v. S.F. & G., Inc.,* 605 F.Supp. 1548, 1560, 37 FEP Cases 926, 935 (N.D.Ala.1985). In fact, the court in *Welty* stated that "the cases have consistently held that the doctrine of equitable tolling is inapplicable where a plaintiff is represented by counsel." *Welty, supra, Id.*

▪ The plaintiff argues that the 180-day period should begin to run from the day that he first consulted with an attorney. This argument is without merit. As discussed above, it is not necessary that plaintiff have specific knowledge of his legal rights. Only a general knowledge is required. When the court adds the fact that plaintiff obtained advice from his counsel to the general knowledge plaintiff already possessed, the court must and does conclude the doctrine of equitable tolling does not apply under the facts of this case. It is clear that the equitable doctrine of tolling should not be used to save the case of a plaintiff who has not been diligent in the pursuit of his legal rights.

It must be remembered that all the plaintiff is required to do before bringing a civil action under the ADEA is file a letter with the EEOC charging a violation of the ADEA. It is not a complicated task. The letter which the plaintiff filed is attached as Exhibit C to the defendant's motion. It consists of a one page letter and a one page form, both of which should have taken no more than an hour to prepare. The doctrine of equitable tolling was not meant to be applied in a case where the plaintiff knew he had been wronged from the first day, consulted a lawyer within the time for filing a charge but failed to comply with the filing requirements. Plaintiff has offered no other excuse than "that is the

Deposition of plaintiff, page 77, lines 13–21.

Q. I am asking when was the first time that Mr. Clark spoke to or consulted with an attorney about his termination.

A. That to the best of my knowledge, sometime middle June. The First of July of 1985.

Deposition of plaintiff, page 78, lines 10–15. See also, the affidavit of plaintiff attached to his opposition as Exhibit D.

Q. Did you tell him that you were contemplating suing the company?

A. Yes.

Q. When did that conversation take place?

A. May, June June.

Q. Prior to having consulted Mr. Shuler.

A. That's correct.

Deposition of plaintiff, page 80, lines 12–20. This last excerpt is in response to questions about conversations that the plaintiff had before he consulted with his attorney in July. It is clear that even before consulting with an attorney, he was contemplating suit against the company. This general knowledge of his rights is enough to prevent the tolling of the 180-day

period for filing under the ADEA. This feeling of being discriminated against or wronged was present from the moment of the phone call by Freed. Therefore, the period ran from that point.

20. While some cases have stated that mere failure to post ADEA notice is not sufficient to toll the 180-day period when the employee has a means of knowledge other than the notice, *Pruet Production Co. v. Ayles,* 784 F.2d 1275, 1280 (5th Cir.1986) and *Cruce v. Brazosport Ind. Sch. Dist.,* 703 F.2d 862, 864 (5th Cir.1983), other cases have intimated that the 180-day period does not begin to run in situations of this sort until the plaintiff actually has knowledge or consults an attorney. *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 563 (5th Cir.1983) and *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.,* 515 F.2d 1195, 1198 (5th Cir.1975). This court does not reach the issue of which line should be followed. As explained in the opinion, the court's holding is based on other grounds.

lawyers, what they do." [21] Plaintiff's lawyers had at least sixty days left of the 180 days set forth in the statute when they were first consulted by the plaintiff. The plaintiff had every opportunity to file his charge within the 180 days and failed to do so. No excuse has been offered for his failure. Since the plaintiff bears the burden of proving grounds for equitable tolling, and since plaintiff has failed to meet this burden, equitable tolling cannot be applied under the facts of this case.

It must be noted that the Fifth Circuit has stated in dicta that when the employer fails to post notice the 180 days begins to run when "either plaintiff acquired actual knowledge" or had the means of knowledge of his ADEA rights. *Charlier, supra,* 556 F.2d at 765. This court does not believe its opinion contradicted that statement today. Rather, the court holds that consulting an attorney during the period of limitations is but one factor that may lead the court to reject arguments of equitable tolling. This court has already found that the plaintiff had means of knowledge and general knowledge of his rights under the ADEA. The fact that he consulted with an attorney well before the 180–day period expired only strengthens the court's finding that the doctrine of equitable tolling should not be applied to save the plaintiff from his own inattention and lack of diligence in pursuing his rights under the ADEA.

### 2) *equitable estoppel*

■ The plaintiff also argues that the agreement which was signed on March 15, 1985 coerced him to forego any legal action he may have had as a result of his termination. Therefore, he contends that the defendant should be estopped from using the limitations defense. This argument is also without merit.

The plaintiff relies on the case of *Felty v. Graves-Humphreys Co.,* 785 F.2d 516 (4th Cir.1986) in support of his argument that a severance agreement tied to a large severance pay provision over a period of time can be grounds to estop a party from asserting a defense of limitations. The severance pay provision in *Felty* was tied to a "code of silence" which if violated would cause the loss of the benefits. *Felty, supra,* 785 F.2d at 520. The case before the court can easily be distinguished from *Felty.*

The severance agreement signed by the parties provides that the plaintiff shall not disclose any "proprietary information" in any form to anyone at any time. The clause even defines "proprietary information." [22] The agreement also states that it may be terminated if the obligations of the agreement were violated. Nowhere in the agreement does it state that the plaintiff would lose his benefits if he filed suit to enforce his rights under the law. There is also no attempt to have plaintiff waive any claim he may have. The severance agreement simply states that plaintiff can take no action derogatory or detrimental to the company. This language when read in the light of the previous paragraph clearly refers to the dissemination of information by the plaintiff which would injure the company. Since the plaintiff had been employed by the company for 24 years, the knowledge that he possessed about the operation of the company was extensive. Since the plaintiff's departure from the company was less than amicable, the company had a valid concern which it had every right to protect. The court finds that the agreement of March 15, 1985 was not an attempt to force the plaintiff to forego the pursuit of valid legal claims against the company. Therefore, the fact that the plaintiff felt coerced

---

**21.** Deposition of plaintiff, page 81, lines 14–15.

**22.** "For purposes of this Agreement, the phrase 'proprietary information of Resistoflex' means all information which individually or in the aggregate is known only to any of Resistoflex employees (including former employees) or consultants or to other persons in a confidential relationship with Resistoflex, and without limit-

ing the generality of the foregoing, relates not only to technical matters but to specific business matters such as the identity of suppliers and customers, of business and accounting procedures of Resistoflex or to other business of Resistoflex."

Termination Agreement of March 12, 1985, Exhibit B to defendant's motion.

is not relevant. The test to be applied by the court is an objective test and not a subjective one. It is clear that the defendant wanted to protect its trade 'secrets and the provisions of the severance agreement were an attempt to carry out that intent.

In *Felty, supra,* the plaintiff was warned "not to discuss the termination or he would be subject to instant dismissal." *Felty,* 785 F.2d at 519. The court held this to be a blanket gag order that extended to possible communications with an attorney. No such blanket gag order exists in the case before this court. As discussed above, the company had a valid concern about the dissemination of valuable information to its competitors by a disgruntled employee. The clause in the severance agreement attempted to deal with this problem and nothing more.

It must be remembered that plaintiff bears the burden of proof for equitable estoppel. In order to be successful, the plaintiff needs to show either deliberate design by the employer or actions that the employer should have unmistakably realized would have caused the employee to delay the filing of his charge. *Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 965 (4th Cir.1982). The plaintiff has produced nothing more than the severance letter of March 15, 1985. As a matter of law, this letter does not warrant the remedy of estoppel.

The court must again note that plaintiff had sought legal advice during the 180–day period. His counsel could have made the same analysis of the agreement this court has made in this opinion.

## II. The ERISA Claim

In addition to the ADEA claim discussed above, the plaintiff argues that his discharge was in violation of the provisions of the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. § 1132 et seq. In support of this position the plaintiff contends that had he been allowed to continue in his employment for the defendant, he would have accrued additional retirement benefits. The figure used to calcu-

late the plaintiff's retirement benefits under the plan would have been increased by one and one-half (1½) percent for each additional year of employment. The plaintiff asserts that Resistoflex wrongfully discharged him for the purpose of preventing the accrual of these additional benefits.

In response to plaintiff's ERISA claim, the defendant argues that plaintiff fails to state a claim for which relief may be granted. In the alternative, the defendant asserts that the plaintiff has failed to plead and prove that the motive for the termination was to interfere with plaintiff's attainment of vested pension benefits. *Donohue v. Custom Management Corp.,* 634 F.Supp. 1190 (W.D.Penn.1986).

The plaintiff has admitted that he was fully vested in the retirement plan.[23] The defendant has also submitted the affidavit of Tom Brath, Jr., the Vice President of Human Resources for Resistoflex, which states that the plaintiff was fully vested in his pension benefits. Therefore, it is not disputed that plaintiff was fully vested in the plan but lost the opportunity to accrue further benefits as discussed above.

■ Under 29 U.S.C. § 1140, the plaintiff must plead and prove that the motive for termination was to interfere with the attainment of vested pension benefits. *Donohue, supra,* 634 F.Supp. at 1197. Since the plaintiff was fully vested in the pension plan prior to his termination, the claim presented does not fall within the legislative intent of ERISA. *Donohue, supra; Corum v. Farm Credit Services,* 628 F.Supp. 707, 717 (D.Minn.1986). The purpose of ERISA is to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *West v. Butler,* 621 F.2d 240, 245 (6th Cir.1980).

■ Plaintiff argues that since the discharge caused him to lose the opportunity to accrue additional benefits, the legislative intent of ERISA has indeed been violated. Assuming that plaintiff has stated a claim

---

**23.** See plaintiff's deposition, page 93.

under ERISA, plaintiff has failed to prove that the necessary intent was present.

Denying a vested employee the opportunity to accrue additional benefits, however, has only an incidental effect on plaintiff's rights to benefits. Such an impact, moreover, "would result from any discharge." *Baker* [*v. Kaiser Aluminum and Chemical Corp.*, 608 F.Supp. 1315, 1319 (N.D.Cal.1984)]. Where the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth sufficient evidence to defeat summary judgment.

*Corum, supra,* 628 F.Supp. at 718. Plaintiff has offered no evidence to support his claim under ERISA other than the effect the termination had on his right to accrue additional benefits. Under the authorities cited above and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), plaintiff has failed to carry his burden of producing some evidence to support each element of his claim. The plaintiff may not defeat a summary judgment by merely showing that he lost the opportunity to get increased benefits. Such an allegation could be made in any termination case. Furthermore, the plaintiff is not entitled to a trial simply because state of mind is an element of his ERISA claim. "There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975) *cert. denied* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Baker, supra,* 608 F.Supp. at 1319. Plaintiff has failed to produce such evidence. There being no material issues of fact in dispute, defendant is entitled to summary judgment as a matter of fact and law. The defendant's motion for summary judgment should be granted on the ERISA claim.

### III. The State Claim for Breach of Contract

The plaintiff has also alleged a cause of action under state law asserting that the defendants breached the employment agreement by terminating the plaintiff without cause. The plaintiff argues that an oral contract of employment was formed during three conversations with executives of the defendant companies. The plaintiff does not argue that such a contract was for a fixed term.

Under Louisiana law, such an allegation does not state a claim for which relief can be granted. In Louisiana a contract of employment is terminable at will unless it is for a definite term. *Overman v. Fluor Constructors,* 797 F.2d 217, 218–219 (5th Cir.1986); *Hoover v. Livingston Bank,* 451 So.2d 3, 5 (La.App. 1st Cir.1984). The plaintiff argues that in some cases, Louisiana courts will imply such a term if special consideration is given. However, plaintiff has failed to introduce any evidence to support such a claim. Under *Celotex, supra,* the plaintiff cannot rely on unsupported allegations in the complaint. Therefore, whether Louisiana law would allow such a claim is immaterial. The plaintiff has failed to introduce *any* evidence on this issue. Since this is the case the motion for summary judgment should be granted and the state law claim of the plaintiff dismissed.

Therefore:

IT IS ORDERED that the defendant's motions for summary judgment be and each is hereby GRANTED.

IT IS FURTHER ORDERED that plaintiff's suit be dismissed with prejudice.

Judgment shall be entered accordingly.