**William L. CLARK, Plaintiff-Appellant,**

v.

**RESISTOFLEX COMPANY, A DIVISION OF UNIDYNAMICS CORPORATION and its successor Crane Resistoflex Company, a Division of Crane Co., Defendant-Appellee.**

No. 87–3611.

United States Court of Appeals, Fifth Circuit.

Sept. 14, 1988.

G. Phillip Shuler, Dona J. Dew, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for plaintiff-appellant.

Andrew P. Burnside, Keith M. Pyburn, McCalla, Thompson, Pyburn & Ridley, New Orleans, La., Daniel A. Rizzi, Kenneth J. McCulloch, Kramer, Levin, Nessen, Kamin & Frankel, New York City, for defendant-appellee.

Before THORNBERRY, WILLIAMS, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Appellant William Clark, a former employee of appellee Resistoflex Company ("Resistoflex"), brought suit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 *et seq.*, alleging he had been discharged because of his age and because Resistoflex desired to prevent him from accruing enhanced benefits under the pen-

sion plan in which he was vested. After extensive discovery, the district court granted summary judgment for Resistoflex on grounds that the ADEA claim was time-barred—Clark having failed to file his charge of discrimination with the EEOC within 180 days—and that Clark's ERISA claim was both legally and factually insufficient. Finding that the record contains fact issues relating to when Clark's ADEA claim accrued and whether Resistoflex should be estopped from raising a limitations defense thereto, we reverse the district court's dismissal of that claim and remand for further proceedings. However, we affirm the district court's dismissal of Clark's ERISA claim as factually insufficient, without reaching whether Clark's allegations, if true, state a cause of action under ERISA.

## I. *Facts and Procedural History.*

Resistoflex Company, a division of Unidynamics Corporation at the time in question, hired Clark in 1961 and kept him continuously employed until March 1985. At the time of his discharge, Clark was 48 years of age and worked as a regional sales manager out of the company's Baton Rouge, Louisiana, office. Resistoflex is headquartered in New Jersey.

On March 11, 1985, Clark received a phone call from his immediate supervisor, Bruce Freed, who six months earlier had come to work for Resistoflex and had replaced Clark's previous supervisor. Freed began the conversation by telling Clark that he, Freed, was "going to terminate" him. Freed also stated various reasons for this action, although Clark was too distraught to make any mental note of them. The conversation was heated but short, as Clark requested that Freed transfer the call to the company's personnel office. Clark then spoke to a personnel employee, Katherine Mulanaphy, who told him he soon would receive a letter that would "clarify his status" with Resistoflex.

On March 15, 1985, Clark received a letter dated March 12 from the personnel director, Tom Brath. This March 12 letter summarizes the terms and conditions of Clark's termination, which became effective on March 15. The letter detailed when severance pay would be made; the length of time medical insurance would remain in effect; and Clark's vested status in the company's pension plan. The letter also stipulated that Clark agree to refrain from using or disclosing proprietary information. Lastly—and significantly—the letter reserved to Resistoflex the right to terminate the severance agreement should Clark violate his "obligations hereunder or take any action, by word or deed, which would be derogatory or detrimental to or otherwise prejudicial to" Resistoflex. Clark testifies that this condition in the severance agreement initially deterred him from seeking counsel to assist him in vindicating his rights.

Clark filed his charge of discrimination with the EEOC on September 10, 1985, or 183 days after his telephone conversation with Freed. Thereafter, he brought this civil action under the ADEA, alleging age discrimination, and under ERISA, alleging that Resistoflex's purpose in terminating him was to deprive him from enhancing, through job longevity, his vested rights to company pension benefits. Clark also brought a state law claim for breach of employment contract, a claim which he has abandoned on appeal.

On August 17, 1987, the district court granted summary judgment for Resistoflex on all counts. 665 F.Supp. 1216. The court held Clark's ADEA claim time-barred because he had failed to file his charge with the EEOC within the 180–day period required under 29 U.S.C. § 626(d). In so holding, the court refused to apply either equitable tolling to the EEOC filing deadline or equitable estoppel to Resistoflex's assertion of the filing deadline as a defense. Furthermore, the court dismissed Clark's ERISA claim on the ground that ERISA affords a vested employee no right to job longevity as a means of augmenting his pension. As an alternative ground, the court held that Clark's summary judgment evidence failed to raise a fact issue as to whether Resistoflex discharged him with specific intent to violate ERISA, an essential element of his claim. Clark appeals.

## II. *The Age Discrimination Claim.*

■ A charge of discrimination must be timely filed with the EEOC prior to the initiation of a civil action under the ADEA. *Love v. Pullman,* 404 U.S. 522, 523, 92 S.Ct. 616, 617, 30 L.Ed.2d 679 (1972). Under the ADEA, two different time limits are applied to determine when the charge must be filed, depending upon whether the unlawful practice occurred in a "deferral state": If the unlawful practice occurred in a nondeferral state, the complaint must be filed in 180 days; but if it occurred in a deferral state, the time limit is extended to 300 days. 29 U.S.C. § 626(d).[1] At the time he was terminated, Clark's regular place of employment was Louisiana—then, a nondeferral state[2]—and the parties on motion for summary judgment argued their respective positions under the assumption that the 180–day period applied. Our analysis therefore proceeds on the basis of this assumption.

■ The operative date from which the 180–day filing period begins to run is "the date of notice of termination, rather than the final date of employment." *Elliott v. Group Medical & Surgical Serv.,* 714 F.2d 556, 563 (5th Cir.1983) (citing *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), and *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)). Determination of when notice has been communicated to an employee is based upon an objective standard, focusing upon when the employee knew, or reasonably should have known, that the adverse employment decision had been made. *McWilliams v. Escambia School Bd.,* 658 F.2d 326, 328 n. 1 (5th Cir.

Unit B Oct. 1981). In the Supreme Court's language in *Ricks,* the relevant inquiry is when Resistoflex may be considered to have "established its official position—and made that position apparent" to Clark. 449 U.S. at 262, 101 S.Ct. at 506.

■ Another general feature of the EEOC filing requirement relevant to the present appeal is that Congress intended it to function as a statute of limitations rather than a jurisdictional prerequisite. Therefore, the filing deadline is subject to equitable modification, through tolling or estoppel, where necessary to effect the remedial purposes of the ADEA. *See Pruet Production Co. v. Ayles,* 784 F.2d 1275, 1279 (5th Cir.1986). *See also Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 395 n. 11, 102 S.Ct. 1127, 1133 n. 11, 71 L.Ed.2d 234 (1982) (citing H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 12, *reprinted in* 1978 U.S.Code Cong. & Ad.News 504, 528, 534 ("The conferees agree that the 'charge' requirement is not a jurisdictional prerequisite to maintaining an action under the ADEA and that therefore equitable modification for failing to file within the time period will be available to plaintiffs under this Act.")).

### A. *When Did Clark Receive Notice of Termination?*

The district court ruled as a matter of law that Resistoflex's decision to terminate Clark was unequivocally communicated to him on March 11, 1985, when he received the phone call from Freed. Measured from this date, the 180–day period expired on September 9, 1985.[3] Clark's letter is stamped "received" by the EEOC on Sep-

---

1. A deferral state is one in which (1) a state law prohibiting age discrimination in employment is in effect and (2) a state authority has been set up to grant or seek relief from such discriminatory practice. 29 U.S.C. §§ 626(d) and 633(b).

2. At the time Clark was terminated, Louisiana law prohibiting age discrimination in employment specifically exempted employers, like Resistoflex, who were subject to ADEA. LSA–R.S. 23:976. The exemption provision was repealed in 1985, but at least one federal district court has held that the Louisiana statute has no retroactive application against previously exempted

employers. *See Smith v. Ethyl Corp.,* No. 86–133–A (M.D.La. Apr. 4, 1986).

In his reply brief on appeal, Clark asserts for the first time that *Smith* was wrongly decided and that the 300–day period should govern here. Since we discern no manifest injustice in declining to consider this untimely argument, we deem it waived and thus offer no opinion as to its merits.

3. Actually, 180 days had elapsed on September 7, 1985; but since September 7 was a Saturday, Clark had until Monday, September 9, to file his charge.

tember 10, 1985, or 183 days after the alleged discriminatory act.

In so ruling, the district court focused its inquiry on specific language used by Freed in communicating the company's termination decision to Clark. Freed's statement that he was "going to terminate" Clark was held to articulate clearly "the official and final position of the general sales manager and should have put the plaintiff on notice that he was terminated." Relying upon *Chardon v. Fernandez, supra,* the district court reasoned that a termination message couched in future tense is no less clear than a present-tense expression: "While the termination was not effective until another date, the decision to 'terminate' had been made and communicated at this point."

█ The inquiry does not end here, however. Circumstances surrounding Freed's phone message, coupled with mixed official signals conveyed to Clark afterwards by the company's personnel office, are collectively sufficient to cast doubt upon whether a reasonable employee in Clark's position should have known that he had been discharged.

The record contains undisputed evidence that Freed lacked independent authority to terminate Clark, but had nonetheless threatened him with termination on previous occasions. Resistoflex had no formal procedures for issuing termination notices; thus, when Clark received Freed's call, he could not be certain whether Freed was simply voicing his personal goals and that the ultimate decision to terminate him had not been made or delegated to Freed by Resistoflex.

As the district court correctly points out, the relevant inquiry is not on the subjective state of mind of the plaintiff, but rather, on the sufficiency of the notice plaintiff received. But Clark was told by Resistoflex, only minutes after his brief, acrimonious exchange with Freed, that the company personnel office would send him a letter "clarify[ing] his status" as an employee of Resistoflex. Given these circumstances, a jury could reasonably find that that letter, not received by Clark until March 15, triggered the running of the EEOC filing deadline. Therefore, the district court erred in disposing of this issue on summary judgment.

Resistoflex argues that the alleged promise by the personnel office to clarify Clark's employment status is incompetent as summary judgment evidence. If this critical piece of evidence is excised from the summary judgment record, then, of course, the sufficiency of the termination notice issued by Freed becomes a closer question. Resistoflex cites to us the Ninth Circuit's opinion in *Radobenko v. Automated Equip. Corp.,* 520 F.2d 540, 543–44 (9th Cir.1975), which states that a party who has already given deposition testimony about a subject cannot defeat a summary judgment motion by submitting an affidavit on a material issue that contradicts his prior deposition testimony. Accordingly, Resistoflex maintains that Clark, in deposition, first testified that he contacted the personnel office to ascertain the status of *his termination benefits.* Only later, in an affidavit drafted to defeat summary judgment, does Clark imply that the personnel office led him to believe that status of *his employment* would remain in abeyance until he received a confirmation letter.

We are unpersuaded by this argument. In *Kennett-Murray Corp. v. Bone,* 622 F.2d 887 (5th Cir.1980), we read the Ninth Circuit's *Radobenko* decision as denying credence to an affidavit so markedly inconsistent with the affiant's prior deposition as to constitute an obvious sham. Here, Clark's affidavit supplements, rather than contradicts, his earlier deposition testimony, and thus, the concerns raised in *Radobenko* are not present in this case.

During his deposition, Clark was asked about termination benefits only once; his answer was that he indeed had spoken to the personnel officer, Mulanaphy, about them. Since Clark was not asked to exhaust his recollection about the dialogue between himself and Mulanaphy, he had no occasion to reveal that the company had held out hope as to his employment status. Thus, his statement in his affidavit cannot be considered, even in a broad sense, a

sham reformulation of what was said during that conversation.

## B. *Was the 180–Day Period Equitably Tolled?*

■ The ADEA requires every employer to post information "upon its premises" setting forth its employees' rights under the ADEA. 29 U.S.C. § 627; *see also* 29 C.F.R. § 1627.10 (formerly *id.* § 850.10). When it is found that the employer has failed to post the notice required by this section, equitable tolling can be applied. *See, e.g., Elliott v. Group Medical & Surgical Serv.,* 714 F.2d 556, 563–64 (5th Cir. 1983); *Charlier v. S.C. Johnson & Son, Inc.,* 556 F.2d 761 (5th Cir.1977).

Resistoflex posted the required notice on a bulletin board in the company cafeteria at its New Jersey headquarters. However, no notice was posted at the Baton Rouge branch office, out of which Clark regularly worked. Clark did travel to the home office two or three times a year, took his meals in the company cafeteria, and thus had had between 40 and 120 opportunities to read the bulletin board over the 10–year period prior to his termination. Clark states he never actually saw the notice, which statement must be accepted as true for purposes of this appeal.

Both parties rely heavily upon two previous decisions of this court: *Edwards v. Kaiser Aluminum & Chem. Sales, Inc.,* 515 F.2d 1195, 1198 (5th Cir.1975), and *Charlier v. S.C. Johnson & Son, Inc.* Since the parties cite these cases for diametrically opposed propositions, we now chart our own path through the thicket.

In *Edwards,* we concluded that an employer's failure to post a section 627 notice upon its premises did not extinguish completely an aggrieved employee's duty to file a charge timely with the EEOC. Because Edwards had failed to file his charge within 180 days both of securing counsel and acquiring *actual* knowledge of his rights, his suit was held time-barred. This holding allowed us to avoid the question of whether the employer's noncompliance with section 627 served to toll running of the 180–day period until such time as Edwards had secured counsel or had acquired actual knowledge of his ADEA rights.

This question left open in *Edwards* we later answered in *Charlier.* There, the district court granted summary judgment for the defendant employer on the ground that the two plaintiffs, Charlier and Russell, had filed their charge letters more than 180 days after the alleged violation occurred. Although the employer had posted a section 627 notice in its regional Houston, Texas, office, we, on appeal, found such notice "insufficient to provide Charlier, who lived and worked in Central Texas and visited the regional office only 3 times in 19 years, with adequate *constructive* notice of his ADEA rights." 556 F.2d at 762 (emphasis added).

Russell, on the other hand, who also lived and worked in Central Texas, had visited the Houston office "occasionally." But the record on appeal neither disclosed whether "occasionally" meant "once a month or once a year," nor whether the notice had been posted in a location "readily observable" to Russell. *Id.* at 764. Thus, the case was *remanded* to the district court to determine whether the notice was "adequate" as to Russell, the clear implication being that if the notice were adequate, Russell should be charged with constructive notice of it. As the court maintained:

> To fulfill the purposes of section 627 and regulation 850.10, an employer's notice must provide employees with a meaningful opportunity of becoming aware of their ADEA rights so that one may reasonably conclude that the employees either knew or they should have known of their statutory rights. To this end notice adequate for one group of employees does not necessarily suffice for another group working primarily in a different locality.

*Id.* (citation omitted).

In *Charlier,* we also found the record unclear as to whether either plaintiff, Charlier or Russell, or both of them, had acquired *actual* knowledge or the "means of knowledge" of their ADEA rights. The case was thus remanded also for a determi-

nation as to when plaintiffs secured counsel—the means of knowledge—or acquired actual knowledge "so as to trigger the running of the 180–day filing requirement of 29 U.S.C. § 629(d)." *Id.* at 762.

■ In sum, then, *Charlier* stands for these basic propositions: An employer's duty to post section 627 notices does not require posting at every location where the employer does business, so long as the notice that is posted provides employees with a "meaningful opportunity of becoming aware of their ADEA rights." If the employer discharges its duty under section 627 as to a particular employee, that employee is deemed to have constructive knowledge of his ADEA rights and, thus, cannot invoke equitable tolling of the filing period. If, however, the employer fails to discharge its duty under section 627 as to a particular employee, the filing period is tolled unless or until the employee has acquired actual knowledge of his ADEA rights or acquires the "means" of such knowledge by consulting an attorney about the discriminatory act.

■ In the instant case, the district court refused to toll the filing period because Clark was found to have both constructive *and* actual knowledge of his rights. The court's constructive knowledge theory is based upon *Charlier:* Since Clark made what the district court characterized as frequent visits to the home office cafeteria— i.e., a minimum of 40 visits over a 10–year period—Resistoflex's duty under section 627 to provide him a "meaningful opportunity" to see the posting and learn of his ADEA rights was satisfied; Clark thus should have known of them *as a matter of law.* Of course, in *Charlier,* the "meaningful opportunity" question was precisely one on which a panel of this court reversed summary judgment for the employer and remanded.

Our need to reach that question here, however, is obviated by the fact that Clark had actual knowledge of his ADEA rights. In his deposition, when asked when he first became aware that he had been subjected to an unlawful practice, Clark responded, "The day I was released from the compa-

ny." Since the district court assumed that day to be the day of Freed's call (March 11, 1985), the court concluded that Clark had had general knowledge about his rights for at least 183 days before filing his charge. Moreover, because there is no reference in the testimony that anyone told Clark of his general ADEA rights on that particular day, the clear inference from his statement is that he had had general knowledge concerning age discrimination laws for some time beforehand.

Such knowledge is all that is required for one to have "actual knowledge" of his ADEA rights, sufficient to defeat application of equitable tolling. In *McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483 (11th Cir.1984), a case relied upon by the court below, the court affirmed summary judgment for a defendant employer, holding that "an employer's failure to post the requisite notice will equitably toll the 180–day notification period, but only until the employee acquires *general* knowledge of his right not to be discriminated against on account of age, or the means of obtaining such knowledge." *Id.* at 1486 (emphasis in original). The court further found it unnecessary "to toll the notification period up to the time that the employee obtains knowledge of his *specific* rights under the ADEA and/or the existence of the 180–day filing period." *Id.* (emphasis in original). Adopting this reasoning, we hold that there were no facts on the basis of which a trier of fact reasonably could find the predicate circumstances necessary for equitable tolling.

C. *Is Resistoflex Equitably Estopped from Asserting the 180–day Limitations Period?*

Clark draws his equitable estoppel argument from *Felty v. Graves-Humphreys*, 785 F.2d 516 (4th Cir.1986). There, the employee was arguably induced to refrain from communicating with an attorney or the EEOC as a *quid pro quo* for the employer's promise of generous severance benefits. *Id.* at 519–20. Given these facts, the Fourth Circuit held that equitable *tolling* of the filing period was unwarranted

because the employee knew of his ADEA rights at the time of his termination. However, the court reversed summary judgment for the employer on ground that the district court had "failed to recognize that a material question of equitable *estoppel* was also raised on the facts presented." *Id.* [4]

■ On remand, the district court in *Felty* conducted an evidentiary hearing, on the basis of which it reinstated summary judgment. *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987). When the case was then appealed for a second time, the Fourth Circuit affirmed, describing the level of employer culpability required to trigger equitable estoppel in terms of a recklessness standard: The doctrine may properly be invoked when the employee's untimeliness in filing his charge results from either the employer's "deliberate design" to delay the filing or actions that the employer "should unmistakeably have understood" would result in the employee's delay. *Id.*

■ We hold that Clark's summary judgment evidence clearly raises a fact issue under this test. The March 12 termination letter provides for some $44,000.00 in severance benefits to be paid out over 5½ months, or approximately 170 days. As a condition of receipt thereof, Clark agreed not to disclose proprietary information belonging to Resistoflex. In a subsequent paragraph, the letter also contained the following admonition:

> This Agreement may be terminated at any time by UniDynamics should you violate your obligations thereunder *or* take *any* action, by word or deed, which would be derogatory or detrimental to or otherwise prejudicial to the interests of UniDynamics, its divisions [i.e., Resistoflex] or subsidiaries. [Emphasis added.]

In his affidavit Clark testified—and we hold that a reasonable trier of fact could believe—that the above-quoted admonition deterred him from filing suit or from seeking legal advice until June 1985. A reasonable trier of fact could also conclude that Resistoflex, by design or with a clear understanding of the consequences, worded the severance agreement in such a way as to deter Clark from asserting his ADEA rights, and thus, from seeking legal advice for that purpose.[5]

In granting summary judgment, the district court construed the word "or" (emphasized in the above-quoted admonition) in an explicative sense: The entire passage introduced by "or" is read as merely rephrasing Resistoflex's right to terminate Clark's severance pay if he violated his obligations under the severance agreement. In a preceding paragraph of the agreement is the company's prohibition against Clark's use of proprietary information. Thus, the district court maintains that the admonition, "when read in the light of the previous paragraph[,] clearly refers to the dissemination of information by the plaintiff which would injure the company."

We disagree, based upon a disjunctive reading of the word "or." As we have stated, it would hardly be unreasonable for a trier of fact to infer from the same language that Resistoflex intended that Clark refrain from taking *any* detrimental action against the company, including the filing of a lawsuit. We note, moreover, that this is not a typical contract action where the court's function is to construe the parties' agreement as a question of law. No one here is seeking to enforce the severance agreement.

---

**4.** In comparing equitable estoppel and equitable tolling as mechanisms for modifying a limitations period, the court stated:

> Equitable tolling focuses on the plaintiff's excusable ignorance of the employer's discriminatory act. Equitable estoppel, in contrast, examines the defendant's conduct and the extent to which the plaintiff has been induced to refrain from exercising his rights.

*Felty,* 785 F.2d at 519 (footnote omitted).

**5.** Resistoflex suggests, as did the court below, that Clark's consultation with his attorney during the 180-day period undermines the equity of his position. We disagree, because equitable estoppel arises out of the employer's conduct, not the employee's knowledge of his rights. Given the short limitations period within which the aggrieved employee must file his charge with the EEOC, moreover, even a brief hesitation by the employee in seeking legal advice may be fatal to his claim.

## III. *The ERISA Claim.*

Section 510 of ERISA prohibits employer action against an employee who participates in a pension benefit plan for "the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. To recover under section 510, a plaintiff need not show that "the *sole* reason for his [or her] termination was to interfere with pension rights"; however, the plaintiff must show that the employer had the "specific intent to violate ERISA." *Gavalik v. Continental Can Co.,* 812 F.2d 834, 851 (3d Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987) (emphasis in original; citations omitted).

This appeal raises the question of whether an employee, fully vested in a retirement plan, can state a claim under section 510 of ERISA by demonstrating that the employer took action calculated to prevent accrual of additional retirement benefits under the vested plan. The district court answered negatively and further concluded that, assuming *arguendo* the validity of such a claim, Clark has failed to raise a fact issue as to whether the motive for his discharge was to interfere with his attainment of enhanced pension benefits.

Clark urges us to adopt a liberal reading of the statutory language "any right," contending that section 510 protects a plan participant from interference with the attainment of a right to increased benefits irrespective of whether the participant's right to some amount of benefits is already vested. Clark's benefits under the plan would have increased by one and one-half percent (1½%) for each additional year of employment. Resistoflex, conversely, contends that section 510 protects only employees whose benefits have not yet vested.

This purely legal question raised by the parties is one of first impression in this circuit. The Seventh Circuit addressed it in

*Kross v. Western Elec. Co.,* 701 F.2d 1238 (7th Cir.1983). *Kross* reversed summary judgment which had been based upon the theory that once an employee has qualified for participation in an insurance plan, the employee can attain no increased "right" under section 510. As the Seventh Circuit noted:

> There is no evidence that Congress intended ERISA to afford less protection to senior employees than that enjoyed by probationary or junior employees who have not qualified for coverage under particular employee benefit plans. Certainly, Congress did not enact ERISA with the intent to negate the long established practice of affording greater benefits and protections to those employees who have more seniority in time of service with the company than to junior employees. Accordingly, we reject the district court's unsupported and narrow interpretation of § 510.

*Id.* at 1243.[6]

In opposition, Resistoflex points to the Sixth Circuit's statement in *West v. Butler,* 621 F.2d 240, 245 (6th Cir.1980), that "[t]he legislative history [of § 510 of ERISA] reveals that the [statute's] prohibitions were aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." As we read this passage, however, the qualifying word "primarily" leaves room for a construction that extends section 510 protection to vested employees as well.

In addition, the holding of *West v. Butler* is not to the contrary. There, the plaintiffs were pension fund trustees who sought to enjoin picketing that prevented coal miners from earning wages otherwise used to fund the pension plan. The Sixth Circuit held that section 510 did not support such a claim, and used ERISA's legislative history to clarify the distinction between the non-

---

**6.** *See also Garry v. TRW, Inc.,* 603 F.Supp. 157, 162 (N.D.Ohio 1985) ("§ 510 does not preclude an employee from pursuing such a claim simply because his benefits have vested"); *Calhoun v. Falstaff Brewing Corp.,* 478 F.Supp. 357, 360 (E.D.Mo.1979) ("[w]hether or not plaintiff's rights were vested within the meaning of ERISA at the time of his discharge is irrelevant to this cause of action."); *but see Donohue v. Custom Management Corp.,* 634 F.Supp. 1190, 1197–98 (W.D. Pa.1986) ("claims [of plaintiffs fully vested in retirement income plan] are not within the legislative purpose of section 510 of ERISA").

employer interference at issue in *West* and employer interference proscribed by ERISA. *West* does not hold that section 510 protects only employees whose pension rights have not vested.

Nevertheless, even if we were to read section 510 as supporting Clark's claim for his alleged loss of an opportunity to enhance his vested pension rights—an issue which we need not decide today—the inference from facts he adduces as to the company's specific intent to violate ERISA is speculative and, hence, fails to raise a fact question precluding summary judgment. Clark's main contention is that Resistoflex will realize certain economies by not having to pay him the larger pension he would receive upon retirement at a later date. He also contends his discharge was pretextual, based upon his "old time salesman's image."

A party against whom summary judgment is sought cannot raise a fact issue simply by "asserting a cause of action to which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

▮ Here, it is undisputed that no benefits previously earned by Clark will be forfeited by reason of his discharge. Thus, regardless of whether the discharge was arbitrary, its impact upon retirement benefits was only incidental—the resulting loss was simply that which would result from any discharge. It follows, then, that where the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad of other possible reasons for which an employer might have discharged him.[7] Accordingly, the district

court properly dismissed Clark's ERISA claim by summary judgment.

### IV. *Conclusion.*

Based upon the foregoing, the judgment of the district court dismissing plaintiff's ERISA claim is AFFIRMED. As to plaintiff's ADEA claim, that part of the district court's judgment holding that the 180-day EEOC filing period should not be equitably tolled is AFFIRMED. However, the district court's judgment as to when plaintiff's ADEA claim accrued, as well as its ruling that the defendant should not, as a matter of law, be equitably estopped from raising the EEOC filing deadline as a defense, is REVERSED and REMANDED for proceedings consistent with this opinion.

SO ORDERED.

---

7. *See Corum v. Farm Credit Services*, 628 F.Supp. 707, 718 (D.Minn.1986) ("Where the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth sufficient evidence to defeat summary judgment."); *Donohue v. Custom Management Corp.*