*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0044P (6th Cir.)
File Name: 00a0044p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ALEX PENNINGTON; HAROLD
GENE CUNNINGHAM,
     *Plaintiffs- Appellees/*
       *Cross-Appellants,*

     *v.*

WESTERN ATLAS, INC.,
     *Defendant-Appellant/*
       *Cross-Appellee.*

Nos. 98-6398/6416



Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 94-00146—William O. Bertelsman, District Judge.

Argued: November 3, 1999

Decided and Filed: February 7, 2000

Before: KEITH, NORRIS, and CLAY, Circuit Judges.

---

### COUNSEL

**ARGUED:** Gregory P. Rogers, TAFT, STETTINIUS & HOLLISTER, Cincinnati, Ohio, for Appellant. Teresa L. Cunningham, Florence, Kentucky, for Appellees. **ON BRIEF:** Gregory P. Rogers, TAFT, STETTINIUS &

HOLLISTER, Cincinnati, Ohio, Joseph E. Conley, Jr., BUECHEL, CONLEY & SCHUTZMAN, Crestview Hills, Kentucky, for Appellant.  Teresa L. Cunningham, Florence, Kentucky, for Appellees.

————————————

## OPINION
————————————

CLAY, Circuit Judge.  In Case No. 98-6398, Defendant, Western Atlas, Inc., appeals from the district court's judgment ordering Defendant to pay Plaintiff, Harold Gene Cunningham, wages and benefits in the amount of $348,090, including interest, while also ordering Defendant to pay Plaintiff, Alex Pennington, wages and benefits in the amount of $135,002, including interest, in relation to the jury verdict finding that Defendant violated § 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140.  In Case No. 98-6416, Plaintiffs cross-appeal from the jury verdict rendered on December 15, 1997, finding no liability on the part of Defendant in relation to Plaintiffs' claims brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*  For the reasons set forth below, the district court's judgment is **AFFIRMED** in Case No. 98-6398 as well as in Case No. 98-6416.

## STATEMENT OF FACTS

### *Procedural History*

Plaintiffs, former employees of Defendant Western Atlas, Inc., were laid off from their jobs and their employment terminated effective September of 1993.  Plaintiffs filed suit against Defendant on August 24, 1994, alleging that their lay-offs were in violation of the ADEA and ERISA § 510.  Plaintiff Cunningham also alleged that Defendant misclassified him as an exempt employee under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and

**CONCLUSION**

For the above stated reasons, the district court's judgment is **AFFIRMED** in Case No. 98-6398 as well as in Case No. 98-6416.

that Defendant failed to pay him overtime in accordance with his alleged non-exempt status.

A jury trial ensued on December 8-12, and December 15, 1997, where, at the close of the evidence, the court granted judgment as a matter of law for Defendant and against Plaintiff Cunningham on his FLSA claim, finding that Cunningham was exempt from statutory overtime requirements as a matter of law.

The jury returned its verdict on December 15, 1997, and found for Defendant on Plaintiffs' claims brought under the ADEA. Acting as an advisory jury on Plaintiffs' claims brought under ERISA § 510, the jury found in favor of Plaintiffs concluding that Defendant laid them off in order to interfere with their pension rights. The district court adopted the jury's advisory verdict, stating that "[i]f there was no right to a jury on the ERISA claim, the Court will consider the jury to be an advisory jury . . . and hereby adopts its findings as those of the Court." (J.A. at 67.) By agreement of the parties, the district court fixed damages on the ERISA verdicts in the amount of $348,090 in favor of Cunningham, and in the amount of $135,002 in favor of Pennington.

Defendant moved for post-trial relief on the ERISA claim under Fed. R. Civ. P. 50(b) and/or 52(b), as well as for the district court make specific findings of fact and conclusions of law regarding its decision pursuant to Fed. R. Civ. P. 52(a). On September 21, 1998, the court issued its findings of fact and conclusions of law, and denied Defendant's motion for judgment as a matter of law. Defendant filed a timely notice of appeal on October 8, 1998, and Plaintiffs filed a cross-appeal regarding their ADEA claim on October 16, 1998.

*Facts*

At the time of Plaintiffs' lay-offs, Defendant was a wholly-owned subsidiary of Littton Industries, Inc. Defendant was comprised of several divisions, including the division in which Plaintiffs were employed -- the Material Handling

Division ("MHD").  MHD sold material handling systems, such as conveyor lines, to move packages and/or parts within warehouses for customers such as Federal Express and United Air Lines.  Litton sold the MHD in November of 1996.

Pennington began working for Defendant's predecessor in 1956, and remained employed by Defendant until 1993, when he was terminated as part of Defendant's workforce reduction.  At the time of Pennington's termination, he earned an annual salary of $29,708 and received health, pension and life insurance benefits as part of his employment benefits package.  Pennington was sixty years old at the time of his termination, but he had planned to work until the age of sixty-five.   As a result of Pennington's employment being terminated at age sixty rather than age sixty-five, his pension benefits were reduced by approximately one-half; therefore, Pennington currently receives $7,692 per year in pension benefits and no health insurance benefits.  Had Pennington remained employed by Defendant until age sixty-five, he would have received twice the amount that he currently receives in pension benefits for his life expectancy of 79 years.

Cunningham began working for Litton Industries in 1966, and was eventually promoted to senior mechanical engineer.  Cunningham was also terminated as a result of a workforce reduction.  Cunningham was fifty-nine years old at the time of his termination in 1993, and like Pennington, had planned to work until the age of sixty-five.   At the time of his termination, Cunningham earned an annual salary of $47,164, and received health, pension and life insurance benefits as part of his employment benefits package.  Cunningham currently receives $12,276 per year in pension benefits and no health insurance benefits.   Had Cunningham remained employed by Defendant until age sixty-five, he would have received annual pension benefits in the amount of $23,548.75 for his average life expectancy of 78.8 years.

benefit payments, and that the pattern of terminations was that more people over the age of fifty were terminated than would be expected in a random process, so as to indicate that it was more likely than not that Defendant was trying to cover-up its true motivation in discharging Plaintiffs.  *See id.*

As such, Defendant's claim on this issue fails.  *See Manzer,* 29 F.3d at 1084.  We are further persuaded in our opinion by the fact that an advisory jury rendered its decision in this case, the credibility of witnesses is involved in ascertaining pretext, and that this Court should give "due regard" to the jury's determination of credibility.  *See Ellis,* 177 F.3d at 505; Fed. R. Civ. P. 52(a).

### Case No. 98-6416 -- Cross-Appeal

Plaintiffs cross appeal arguing that the jury's verdict in favor of Defendant on Plaintiffs' ADEA claim was against the great weight of the evidence.  In order to preserve a challenge to a jury verdict as being against the great weight of the evidence, the appellant must have made a motion for a new trial in district court.  *See Dixon v. Montgomery Ward,* 783 F.2d 55 (6th Cir. 1986).  Failure to do so precludes appellate review.  *Id.* (quoting 6A J. Moore, J. Lucas, & G. Grotheer, Moore's Federal Practice, ¶ 5915[3] at 59-326 to 327 (2d ed. 1985) noting that "the discretionary power of the district court to give relief from an error of fact must first be invoked").

Here, Plaintiff failed to make a motion for a new trial or judgment notwithstanding the verdict in district court in relation to their claim that the jury's verdict was against the great weight of the evidence.  Therefore Plaintiffs' claim is not properly before us – as conceded by Plaintiffs at oral argument. *See Cone v. West Virginia Pulp & Paper,* 330 U.S. 212, 216 (1947) ("Determination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate transcript can impart.").

13. Coons, who worked with Cunningham from 1982 through 1992, testified that he had never witnessed Cunningham disrupting the workplace. Furthermore, Cunningham had performed contract work for Acculift since his termination from Western Atlas, and, while at Acculift, Cunningham met all schedules.

14. Flaig, who also worked with Cunningham, testified that Cunningham met schedules, worked on CAD, always maintained a professional attitude, and did not disrupt the workplace.

(J.A. at 78-79 (transcript cites omitted).)   Accordingly, as found by the district court, and as supported by the record, Plaintiffs did not merely rely upon their *prima facie* evidence that their discharge resulted in a decrease in pension benefits and that Defendant had been looking for ways to decrease its costs associated with employee benefits, to show that Defendant's proffered reasons for terminating Plaintiffs were a mere pretext.   Rather, Plaintiffs came forward with additional evidence which specifically rebutted Defendant's alleged reasons for terminating each Plaintiff.

Plaintiffs' evidence offered to rebut Defendant's alleged reasons consisted of the type one evidence as well as the type two evidence described in *Manzer*.   That is to say, evidence that Defendant's claims were factually false, as well as evidence that circumstances were such that it was more likely than not that Defendant had an improper motive in discharging Plaintiffs. *See Manzer*, 29 F.3d at 1084.   For example, Plaintiffs offered evidence by way of performance appraisals that their supervisors rated their work above quality or excellent just one year to a few months before their discharge, so as to indicate that Defendant's claims that Pennington received low evaluations and Cunningham did not finish his work on time or use the state of the art equipment were false. *See id.*   Plaintiffs also introduced evidence to show that Defendant was seeking to cut costs associated with

Cunningham's pension and medical costs to Defendant would have been $7,110 per year for fiscal years 1994-1997. Pennington's pension and medical costs to Defendant would have been $2,256 per year for fiscal years 1994-1997. Defendant's ten-year pension and medical costs savings on all older employees offered early retirement during the "downsizing" was $12,262,176.71.

In 1992, Keith Wheeler, President of the MHD, and Barbara Carr, a Human Resources Department employee, asked Steven Parsley, the manager of Systems Analysis Engineering, to modify a Lotus spreadsheet that sorted employee information by name, birth date, date of hire, whether the employee smoked, and the employee's benefit program information.   Wheeler and Carr informed Parsley that they were interested in reducing salaries and medical costs and that they were not concerned about lawsuits.   In that same year, Plaintiff Cunningham and three other senior project engineers were left in the engineering department. The head of the engineering department, Jim Gable, told Cunningham and the other three engineers that they were marked for lay-off, but that their names were removed from the list on the advice of Litton's lawyers.   In 1993, all four of the senior project engineers either took an early retirement or were terminated as part of Defendant's alleged reduction in workforce plan.   One of the senior project engineers, Mr. Shirley, took an early retirement, but was then hired back by Defendant as a contractor receiving no benefits associated with his pay.

Also in 1992, Bill Hines was hired by Litton to "interface with employees" and to recruit new employees; in 1993, Hines actively recruited at Georgia Tech and other institutions for openings in the engineering department.   In February of 1993, Defendant hired twenty-four new employees.

Hines prepared a reduction in workforce memorandum entitled "HIGH RISK" which flagged employees by salary, age, disability, premature births of children, surgeries, and

exemption status. Plaintiff Cunningham's name was on the "HIGH RISK" list and his age was highlighted. Hines testified that Defendant's Human Resources department made the selections of which employees would be terminated in connection with the reduction in workforce plan. Plaintiffs' expert witness, Dr. Harvery Rosen, testified that Defendant's pattern of downsizing was not age neutral inasmuch as more employees over the age of fifty were terminated than would be expected in a random process.

Defendant's stated reason for terminating Pennington was that Pennington had the lowest evaluations in his department. However, Pennington's former supervisors did not criticize his work performance, and Pennington's former supervisor, Mike Vogt, could not recall any problems with Pennington's work. Notably, Pennington's supervisor from 1982 through February of 1992, Robert Malone, thought that Pennington's work was meticulous, gave Pennington satisfactory performance evaluations, and rated Pennington's work as "excellent."

Defendant's stated reasons for terminating Cunningham was because he (1) did not meet schedules; (2) did not use Computer Aided Design technology; and (3) disrupted the workplace. However, David Gilkes, Cunningham's immediate supervisor, evaluated Cunningham's performance as "above-quality work" in Cunningham's 1993 performance evaluation. Cunningham's co-worker, Randy Coons, worked with Cunningham from 1982 through 1992, and stated that he never witnessed Cunningham disrupting the workplace. Another co-worker, Robert Flaig, testified that Cunningham met schedules, worked on the Computer Aided Design technology, always maintained a professional attitude, and did not disrupt the workplace.

Defendant's pension and savings program was a combination of a 401K and standardized pension fund, where Defendant contributed part of the funds and, during an employee's final years of employment, Defendant's

Accordingly, we hold that, in order to make this type of rebuttal showing, the plaintiff may not rely simply upon his *prima facie* evidence but must, instead, introduce additional evidence of age discrimination.

*Manzer*, 29 F.3d at 1084[2].

Here, the district court found as follows regarding Defendant's proffered reasons for discharging Plaintiffs, and Plaintiffs' evidence to rebut those reasons:

8.  The defendant's stated reason for terminating Pennington was that he had the lowest evaluations in his department.

9.  Individuals from Western Atlas' Human Resources Department provided Pennington's supervisor with the names of the individuals to be laid off.

10. Pennington's former supervisors had no criticism of Pennington's work. Indeed, Malone, Pennington's supervisor from 1982 through 1992, rated Pennington's work satisfactory to above satisfactory and stated that his work was excellent.

11. The defendant provided the following reasons for selecting Cunningham for termination: (1) he did not meet schedules; (2) he did not use Computer Aided Design (CAD); and (3) he disrupted the workplace.

12. Gilkes, Cunningham's immediate supervisor, evaluated Cunningham as performing "above quality work" on his 1993 evaluation.

---

[2]*Kline* also dealt with the requirements for showing pretext; however, the plaintiff in *Kline* brought claims under the ADEA as well as under Title VII. *See* 128 F.3d at 339, 349-51.

show that an employer's alleged legitimate reason for its adverse action against the plaintiff was a mere pretext:

> To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge. The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are factually false. The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity."
>
> The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or a coverup.

contributions escalated.[1] The record indicates that Defendant contributed to Pennington and Cunningham's pension funds.

## ANALYSIS

### Case No. 98-6398 – Appeal

Defendant argues that the district court erroneously concluded that Defendant was motivated by its specific intent to interfere with Plaintiffs' pension benefits when it laid Plaintiffs off from their jobs. We disagree.

This Court reviews a district court's findings of fact for clear error, and a district court's conclusions of law *de novo*. *Tucker v. Calloway County Bd. of Educ.,* 136 F.3d 495, 503 (6th Cir. 1998). "'In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon. . . . Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.'" *See Ellis v. Diffie,* 177 F.3d 503, 505 (6th Cir. 1999) (quoting Fed. R. Civ. P. 52(a)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948).

In *Smith v. Ameritech,* this Court announced the requirements that a plaintiff must meet in order to state a claim under ERISA § 510 as follows:

---

[1] Defendant argues on appeal that the pension fund was over-funded; however, as noted by Plaintiffs, Defendant does not support this argument with statistical data for the year in question -- 1993; rather, Defendant uses data reflecting the status of the fund in 1995, after Plaintiffs and other employees were terminated or took early retirements. (J.A. at 172.)

To state a claim under § 510, the plaintiff must show that an employer had a specific intent to violate ERISA. In the absence of direct evidence of such discriminatory intent, the plaintiff can state a *prima facie* case by showing the existence of (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.

Although . . . not classif[ied] . . . as part of the plaintiff's *prima facie* case, . . . a plaintiff must show a causal link between pension benefits and the adverse employment decision. In order to survive [the] defendants' motion for summary judgment, [the] plaintiff must come forward with evidence from which a reasonable jury could find that the defendants' desire to avoid pension liability was a determining factor in [the] plaintiff's discharge. . . . [I]n an interference claim, the alleged illegal activity will have a causal connection to the plaintiff's ability to receive an identifiable benefit.

129 F.2d 857, 865 (6th Cir. 1997) (internal quotation marks and citations omitted).

Here, the district court concluded that "it is not really disputed that the plaintiffs have established a prima facie case [of interference under § 510]. By terminating the plaintiffs at ages 59 and 60, the defendant avoided paying the additional benefits to which the plaintiffs would have become entitled. The issue, here, is whether the plaintiffs established the necessary causal link between the pension benefits and the adverse employment decision." (J.A. at 81-82.) Having so concluded, the district court then addressed whether Defendant advanced a legitimate reason for terminating Plaintiffs, and whether Plaintiffs sufficiently rebutted the alleged legitimate reason for discharge. The court further concluded as follows:

that the district court did not err in concluding that Plaintiffs established a *prima facie* case under ERISA § 510, which brings us to Defendant's alternative argument; namely, even if the district court was correct in finding that Plaintiffs established a *prima facie* case, the district court erred in concluding that Defendant's alleged reasons for Plaintiffs' discharge were pretextual.

**B.  Whether Plaintiffs Established that Defendant's Alleged Reasons for Their Terminations were a Mere Pretext to Allow Defendant to Interfere with Plaintiffs' Retirement Benefits**

Defendant argues in the alternative that the district court erred in concluding that Defendant's articulated reasons for Plaintiffs' layoffs were pretextual. Specifically, Defendant contests the following conclusion of law made by the district court:

3.   The defendant proffered the following reasons for selecting the plaintiffs for termination: poor performance, disrupting the workplace, and failing to use CAD. The plaintiffs offered substantial evidence (stated above) that the plaintiffs were in fact above average performers, did not disrupt the workplace and did in fact use CAD. The court, with the aid of an advisory jury, disbelieved the proffered reason[s] for discharge.

(J.A. at 82.) Defendant claims that the district court erred in so concluding "because the disbelief of the proffered reason[s] by the Court (and the advisory jury) is simply a disagreement with Western's business judgment – Plaintiffs did not show pretext under the test established by *Manzer v. Diamond Shamrock,* 29 F.3d 1078, 1083-84 (6th Cir. 1994) and *Kline v. Tennessee Valley Authority,* 128 F.3d 337 (6th Cir. 1997)[.]" We disagree.

In *Manzer*, a case brought under the ADEA, this Court explained what evidence a plaintiff must adduce in order to

discharge was motivated by the defendant's intent to interfere with the plaintiff's retirement benefits. *Id.* at 457-58.

Unlike in *Rush*, the evidence in the instant case established that Defendant *was* aware that terminating Plaintiffs before the age of sixty-five would interfere with an established retirement benefit (the amount of annual pension funds received) – i.e., the additional annual pension funds received by Plaintiffs had they worked until sixty-five-years of age was known to both Plaintiffs and Defendant alike. Evidence of Defendant's knowledge that they were interfering with Plaintiffs', as well as other employees' benefits, was noted by the district court in its findings of fact:

15. In 1992, Keith Wheeler, President of the Material Handling Systems Group, and Barbara Carr, a Human Resources Department employee, asked Steven Parsley, the manager of Systems Analysis Engineering, to modify a Lotus spreadsheet that sorted employee information by name, birth date, date of hire, whether the employee smoked, and benefit program information.

16. Wheeler and Carr told Parsley that they wanted to reduce salaries and medical costs and that they were not concerned about lawsuits.

17. According to plaintiffs' expert witness, Dr. Harvey Rosen, the pattern of terminations during the Western Atlas downsizing was not age neutral because more people age 50 and over were terminated than would be expected in a random process.

(J.A. at 79.)

Therefore, Defendant's reliance upon *Rush* is misplaced, as is its reliance upon *Humphreys,* where *Rush* is distinguishable and *Humphreys* supports the district court's conclusions and inures to the benefit of Plaintiffs. Having so opined, we hold

3. The defendant proffered the following reasons for selecting the plaintiffs for termination: poor performance, disrupting the workplace, and failing to use CAD. The plaintiffs offered substantial evidence (stated above) that the plaintiffs were in fact above average performers, did not disrupt the workplace and did in fact use CAD. The court, with the aid of an advisory jury, disbelieved the proffered reason for discharge.

4. Once a plaintiff has disproved the defendant's proffered reason for termination, the fact finder is entitled to infer a discriminatory reason for such termination. *Kline v. Tennessee Valley Authority*, 128 F.2d [sic] 337 (6th Cir. 1997). In this case, the plaintiff[s] offered evidence to disprove the defendant's stated reason[s] for termination. The court, with the aid of an advisory jury, chooses to infer that a desire to reduce pension liability was a determining factor in the plaintiffs' discharge.

(J.A. at 82.)

## A. Whether Plaintiffs Established a *Prima Facie* Case Under ERISA § 510

On appeal, Defendant claims that the district court's conclusion that Plaintiff established a *prima facie* case of interference was erroneous. Relying upon *Humphreys v. Bellaire Corp.,* 966 F.2d 1037 (6th Cir. 1992) and *Rush v. United Technologies, Otis Elevator Division,* 930 F.2d 453 (6th Cir. 1991), Defendant argues that "this Court repeatedly has found that an employee's incidental loss of the opportunity to accrue additional benefits is not evidence of unlawful ERISA interference with pension rights[,]" and thus, the district court erroneously concluded that Plaintiffs established a *prima facie* case simply because Defendant avoided paying additional pension benefits to Plaintiffs by laying them off. Defendant contends that Plaintiffs failed to

present evidence of a specific intent by any of Defendant's employees to violate § 510; or, said differently, that Plaintiffs failed to present any evidence to show that Defendant's desire to avoid pension liability was a determining factor in the Plaintiffs' discharge, and that the district court erroneously concluded that Plaintiffs established a § 510 case in the absence of such evidence.

In *Humphreys v. Bellaire Corp.,* 996 F.2d at 1043-45, this Court reviewed the district court's grant of summary judgment to a defendant corporation regarding the plaintiff's ERISA § 510 claim and, after setting forth the requirements that the plaintiff had to meet in order to state a *prima facie* case under § 510 as well as the burden shifting analysis which a court must conduct after the plaintiff establishes a *prima facie* case, the Court found as follows:

> [The Plaintiff] met his burden of presenting evidence to support each of the elements of a *prima facie* case. He was discharged, and it was his testimony that his pension would have vested in two months and that this would have cost the company a substantial amount. Although it is no more than the bare minimum that a plaintiff must show to meet the *prima facie* case threshold, in this case it satisfies that low threshold because, examining only [the plaintiff's] evidence, the proximity to vesting provides at least some inference of intentional, prohibited activity.

This holding, when juxtaposed against that the district court's conclusion in the instant case, indicates that the district court did not err in concluding that Plaintiff established a *prima facie* case under § 510. As stated, the district court found that "it is not really disputed that the plaintiffs have established a prima facie case [of interference under § 510]. By terminating the plaintiffs at ages 59 and 60, the defendant avoided paying the additional benefits to which the plaintiffs would have become entitled. The issue, here, is whether the plaintiffs established the necessary causal link between the

pension benefits and the adverse employment decision." (J.A. at 81-82.) Accordingly, as in *Humphreys,* the district court did not err in concluding that Plaintiffs established a *prima facie* case based upon the proximity of Plaintiffs' discharge to their age of receiving full retirement benefits.

We are not persuaded otherwise by Defendant's reliance upon *Rush v. United Technologies, Otis Elevator Division,* 930 F.2d 453 (6th Cir. 1991). Defendant claims that *Rush* supports his position that the district court erred in concluding that Plaintiffs established a *prima facie* § 510 case. However, upon close examination of Defendant's argument, one observes that Defendant is not quoting from the facts of *Rush* in his brief on appeal to this Court, but from a case issued by the United States Court of Appeals for the Fifth Circuit upon which *Rush* relied. *See* Defendant's Brief on Appeal at 14 (quoting *Clark v. Reistoflex Co.,* 854 F.2d 762, 771 (5th Cir. 1988) without attribution to that case). Moreover, Defendant's quotation from the *Clark* case is inaccurate to the extent that Defendant added language from the *Rush* opinion to the *Clark* quote.

Defendant's inaccurate and misleading argument aside, the facts of *Rush* are distinguishable from those of the instant case inasmuch as in *Rush,* the plaintiff was claiming that the defendant discharged him in violation of § 510 in order to keep the plaintiff from being eligible for the expanded early retirement benefits which became effective after the plaintiff's discharge. *Rush*, 930 F.2d at 457. However, because the plaintiff failed to produce *any* evidence that anyone at the defendant company had knowledge that the pension plan was going to be amended seven weeks after the plaintiff's discharge, and because the plaintiff failed to produce any evidence that he had ever told anyone at the company that he had planned to retire early if possible – in fact, the plaintiff stated in his deposition that he may not have retired early even if provided the opportunity, this Court concluded that the plaintiff failed to establish that his