**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0737n.06
Filed: August 24, 2005
File Name: 05a0737n.06
Filed: August 24, 2005

Nos. 03-3797/03-3883

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ROBERT L. HUNTER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GENERAL MOTORS CORPORATION, | ) | NORTHERN DISTRICT OF OHIO |
| UAW LOCAL 549, and RON WILLIS, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: NORRIS and DAUGHTREY, Circuit Judges, and MARBLEY,[*] District Judge.

**PER CURIAM.** The plaintiff, Robert Hunter, appeals from a jury verdict rejecting his allegations of race and age discrimination made against General Motors Corporation (GMC), Local 549 of the United Automobile, Aerospace & Agricultural Implement Workers of America (UAW), and Ron Willis, chairperson of Local 549's bargaining committee. On appeal, Hunter contests the sufficiency of the evidence to support the verdict, the admissibility of certain evidence, and various rulings regarding jury instructions. We affirm the judgment of the district court.

---

[*]The Hon. Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

**FACTUAL AND PROCEDURAL BACKGROUND**

In the early spring of 1999, Robert Hunter, an African-American male who was a member of Local 549, was 54 years old and had been employed by General Motors Corporation for more than 13 years, most recently as a "blanker technician." At that time, however, he and 84 of his co-workers applied to become carpenter employees-in-training at GMC's Mansfield, Ohio facility. Had Hunter been accepted into the program, he would have been paid "approximately $3 more an hour than [the $26 per hour he was earning.]"

In settling upon a process for selecting five individuals for the employees-in-training program, GMC's employment supervisor, Larry Ware, and the company's personnel director, Jim Mennier, "were looking for a joint process, one that involved both management and union." In accordance with that goal, the two parties were each given a set of the 85 completed applications and asked to "come back with a recommended group to be interviewed." The two lists of recommended individuals were then combined and each of the 28 selected employees, including the plaintiff, were interviewed for one-half hour.[1] In each instance, the same committee of nine persons -- six union representatives and three company representatives -- plus Ware, met together to interview the candidates and asked the applicants the same 19 questions, focusing in part upon the applicants' trade knowledge and experience.

---

[1]Three of the 28 applicants selected for interviews were African-Americans.

After each interview, the committee members, without consulting with each other, scored the applicant on a form provided to them.[2] Ware threw out each applicant's high and low score, averaged the remaining seven scores, and ranked the interviewees from high to low. In that ranking, the plaintiff had the lowest score among the 27 applicants who actually completed the interview process. Ware also ranked the interviewees according to seniority and allowed the committee to compare the interview results with that seniority chart.

The company representatives on the committee expressed a desire to select the five highest scoring individuals (Roberts, Craft, Shiplet, Baughman, and Coleman) for the employees-in-training program. General Motors did indeed "promote" Roberts, Craft, and Coleman, but Shiplet and Baughman were replaced in the program by two more-senior employees whose interview scores were virtually identical to those of Shiplet and Baughman.

When Hunter learned of the adverse decision on his application for the employee-in-training program, he filed a written complaint with the company's Equal Employment Opportunity officer, alleging racial and age bias in the decision-making process. In support of that charge, he noted that all five of the employees eventually selected for the carpenter employees-in-training program were both white and younger than Hunter.

While that complaint process was running its course, the plaintiff, as an alternate way of entering the carpentry trade at the plant, sought from the union a journeyman carpenter's card. Ron Willis, however, harbored doubts about the plaintiff's carpentry qualifications and relayed those

---

[2]Ware merely conducted the interviews and did not include his impressions of the applicants in any of his later tabulations.

concerns to individuals at the union's headquarters in Detroit. In response, the Skilled Trades Department of the UAW requested that Hunter provide them with earnings information from a prior non-union job so that the union leaders could verify the plaintiff's claimed previous carpentry experience. Hunter not only did not respond to that request, but he also ignored a second letter from the certifying branch of the union that sought the same necessary documentation. Consequently, the union never issued the journeyman carpenter's card to the plaintiff.

After exhausting his administrative remedies in his effort to overturn the company's carpenter employees-in-training selection decision, Hunter filed this action in federal district court against General Motors, against Local 549, and against Ron Willis, the local's shop chairperson. In his complaint, he alleged that the actions of the defendants contravened relevant provisions of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e - 2000e-17, and Ohio Revised Code § 4112.02. He further asserted that the union breached its contractual duty to him to represent him fairly and protect his best interests.

Following a period for discovery, the defendants moved for summary judgment in their favor on all claims. The district court first noted that "Hunter has apparently abandoned" his breach of contract claim and thus did not address that cause of action in its ruling. The court denied the remainder of the summary judgment motions, however. At the ensuing trial, the parties adduced evidence relating to the carpenter employees-in-training selection process and the plaintiff's efforts to obtain a journeyman carpenter's card. In addition, Hunter and other African-American employees of the Mansfield plant testified about race relations at the facility, highlighting instances of

hangman's nooses being placed around the plant and racially-insensitive graffiti and other slogans being painted in the work and break areas.

At the conclusion of the trial testimony, the jury returned a verdict in favor of the defendants on all claims.  The district court then rendered judgment in accordance with that verdict, leading to this appeal.

## DISCUSSION

### I. Racial Discrimination in the Employees-in-Training Selection Process[3]

Hunter first submits that the jury's verdict on his racial discrimination claim regarding the employees-in-training program "was against the great weight of the evidence."  We may not, however, address this allegation of error because, as we stated explicitly in *Pennington v. Western Atlas, Inc.*, 202 F.3d 902, 911 (6th Cir. 2000), "[i]n order to preserve a challenge to a jury verdict as being against the great weight of the evidence, the appellant must have made a motion for a new trial in district court."  Because the appellate record offers no indication that Hunter filed such a motion for new trial, this claim is not properly before the panel.

In any event, overwhelming evidence supports the conclusion reached by the jury in this regard.  The record establishes that Hunter was far from the most qualified individual for inclusion in the carpenter employees-in-training program.  The plaintiff's own lack of qualifications, not

---

[3]In his appellate brief, Hunter makes absolutely no argument or other mention of an age discrimination claim.  Any issue related to the plaintiff's allegations of age discrimination has, therefore, been abandoned. *See United States v. Hough*, 276 F.3d 884, 891 (6th Cir. 2002) (court will consider claim abandoned if not adequately briefed on appeal).

improper racial animus on the part of the defendants, prevented him from attaining the position he desired.

## II. Racial Discrimination in the Denial of a Journeyman Carpenter's Card

Similarly, Hunter did not file a motion for new trial challenging the finding of the jury that race played no factor in the decision of Local 549 and Ron Willis not to issue the plaintiff a journeyman carpenter's card. Thus, we are also precluded from addressing this issue on appeal. *See Pennington*, 202 F.3d at 911. Even if we were to consider the claim, however, we would hold that Hunter is entitled to no relief. The appellate record is uncontradicted that Hunter failed to comply with repeated requests to provide information about his prior employment that the decision-maker found necessary to determine the plaintiff's qualifications for receipt of the journeyman carpenter's card.

## III. Use of Hunter's Income Tax Returns to Impeach Credibility

During cross-examination, Hunter testified that the atmosphere at the Mansfield plant was permeated with racism and that such a situation posed a problem for him. Abruptly, counsel for General Motors then asked, "Mr. Hunter, is it something that would be as significant to you as declaring no income on your income tax?" Subsequently, the court admitted into evidence a copy of the plaintiff's 2000 federal income tax return on which Hunter claimed no income whatsoever. The plaintiff now contends that admission of that evidence was improper because he was unfairly surprised by the fact that the defendants had obtained such information, because the evidence was more prejudicial than probative, because the evidence was irrelevant to the issue of Hunter's

character, and because use of the information violated the plaintiff's Fourth and Fifth Amendment rights.

We review allegations of error in the evidentiary rulings of a trial judge only for an abuse of discretion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). We find no such abuse present here. Hunter's assertions that he was unfairly surprised by the cross-examination and that the defense's possession of the information contravened constitutional principles are without merit. Indeed, General Motors's attorney, without objection or contradiction from the plaintiff, indicated that he received the contested documents from Hunter himself during the discovery process in response to the defense's request for production of documents. Additionally, despite any prejudicial effect that the introduction of the tax return might have had upon the jury, the district judge correctly ruled that the evidence also was probative of Hunter's truthfulness. Pursuant to the provisions of Federal Rule of Evidence 608(b), cross-examination may delve into specific instances of conduct of the witness if probative and if that conduct concerns "the witness' [sic] character for truthfulness or untruthfulness." Because Hunter knew that he had received a substantial salary during the relevant tax year, yet failed to claim such a taxable source of income, the return did indeed reflect upon the plaintiff's truthfulness and was, therefore, admissible at trial.

### IV. Jury Instructions Not Given to the Finders of Fact

In multiple allegations of error, Hunter also contends that the district judge erred in failing to give certain instructions to the jury. Specifically, he asserts that the court should have informed the finders of fact about the legal elements of claims involving a hostile work environment, a union's refusal to represent its members, and an employment decision based upon mixed motives.

Hunter, however, either explicitly or tacitly abandoned both his hostile work environment and breach of duty of fair representation claims. A court need not deliver instructions relevant to claims that are not raised or prosecuted by the litigants.

Moreover, our prior decisions make clear that no reversible error was committed by the failure of the district judge to offer a mixed motive jury instruction. When alleging that mixed motives were involved in an employment decision:

> [T]he plaintiff must produce *direct evidence* that the employer considered impermissible factors when it made the adverse employment decision at issue. Once the plaintiff has shown that the unfavorable employment decision was made at least in part on a discriminatory basis, the burden shifts to the employer to prove by a preponderance of the evidence that it would have taken the same adverse action even if impermissible factors had not entered into its decision.

*Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 571 (6th Cir. 2003) (en banc) (emphasis added) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)). In this case, the only *direct* evidence of discrimination to which Hunter points is the alleged statement of Ron Willis prior to the interviews for the employees-in-training program "that five whites had retired, and he was going to put five whites back in." Focusing upon that comment, Hunter argues that his attempt to gain entry into the coveted program was sabotaged, at least in part, by improper racial animus. Willis's comment cannot, however, support a mixed motive cause of action against *General Motors*, the ultimate decision-maker for the employees-in-training program, because Willis was acting as a representative of the union, not the company, in his participation in the interviewing process.

### V. *McDonnell Douglas* Jury Instruction

In a final appellate issue, Hunter argues that the district court erred in instructing the jury regarding the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff himself, however, requested that such an instruction be given at trial. Except when, in the discretion of the appellate court, the interests of justice demand otherwise, a party will not be heard to complain about any action that he invited. *See United States v. Barrow*, 118 F.3d 482, 490-91 (6th Cir. 1997). This appeal presents no such justification for abandonment of the invited error doctrine.

## CONCLUSION

This appellate record establishes that the plaintiff was excluded from desirable carpentry programs at General Motors's Mansfield plant because he was the least qualified of the applicants and because of his own failure to comply with requests for production of necessary information, not because of his race or age. Finding no reversible error in any of the issues presented by the plaintiff, we AFFIRM the judgment of the district court.