Darrell HILDEBRANDT, Plaintiff,

v.

W.R. GRACE & CO.-CONN.,
et al., Defendants.

Civ. No. AMD 06–1729.

United States District Court,
D. Maryland.

June 26, 2007.

Eric William Gunderson, Farrell and Gunderson, Columbia, MD, for Plaintiff.

Heather Louise Mitchell, Jeffrey P. Ayres, Venable Baetjer and Howard LLP Towson, MD, for Defendants.

## MEMORANDUM OPINION and ORDER

ANDRE M. DAVIS, District Judge.

Plaintiff, Darrell Hildebrandt, a former employee of defendant W.R. Grace & Co.,-Conn. ("W.R.Grace"), was terminated in a workforce reduction and, subsequently, he failed in his efforts to be rehired into other jobs at W.R. Grace. Accordingly, he has

brought this action against W.R. Grace, alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623 and 626, and against W.R. Grace and two of its senior managers, E. Thomas Habib, Jr., and Kupaswammy Rajagopalon, alleging intentional interference with his pension rights, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1140. Discovery having concluded, now pending is defendants' motion for summary judgment. A hearing has been held and the briefing on the motion has been thoroughly considered.[1] For the reasons stated herein, the motion for summary judgment shall be granted in part and denied in part.

## I.

### A.

The legal standards applicable to employment discrimination claims of the sort asserted here are well-settled. The Fourth Circuit has synthesized the standards in a failure-to-promote age discrimination case as follows:

[Under the ADEA], [w]e apply the familiar *McDonnell Douglas* burden-shifting framework to resolve claims of age discrimination when the plaintiff produces no direct or circumstantial evidence of discrimination sufficient to warrant a "mixed-motive" analysis. *See Desert Palace, Inc. v. Costa,* 539 U.S. 90, 101–02, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); *Hill [v. Lockheed Martin Logistics Mgmt.,* 354 F.3d 277 (4th Cir.2004) (en banc)]* at 285. Under this framework, the plaintiff must first establish a prima facie case of discrimination.

*McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. To establish such a prima facie case, a plaintiff must demonstrate that: (1) he was a member of a protected class, i.e., that he was at least 40 years old; (2) his employer had an open position for which he applied and was qualified; (3) he was rejected despite his qualifications; and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the ADEA. *See O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 310–312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

Once a plaintiff makes this prima facie case, he creates a presumption of discrimination, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668. If the defendant satisfies this burden, the presumption disappears and the plaintiff must show that the articulated reason is a pretext for age discrimination. *See Reeves,* 530 U.S. at 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105; *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817, 36 L.Ed.2d 668. To do so, the plaintiff must do more than simply show the articulated reason is false; he must also show that the employer discriminated against him on the basis of age. *See Reeves,* 530 U.S. at 146–47, 120 S.Ct. 2097, 147 L.Ed.2d 105. *In some cases, however, proof that the employer's rea-*

---

1. Although the necessity to do so is not apparent, plaintiff's motion for leave to file his opposition memorandum, and the exhibits thereto, under seal, is granted. Counsel is advised that in the future, sealed matter should be separately filed and entire memoranda should not be offered "under seal."

*son is false is sufficient to show age discrimination when combined with the plaintiff's prima facie case. See id.* at 147–48, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (noting that "once the employer's justification has been eliminated, discrimination may well be the most likely explanation").

*Laber v. Harvey,* 438 F.3d 404, 430–31 (4th Cir.2006)(en banc) (emphasis added). These standards govern plaintiff's failure-to-hire claims. As to plaintiff's discharge-from-employment claim, the elements of his prima facie case are slightly altered. *See, e.g., Bello v. Bank of America,* 320 F.Supp.2d 341 (D.Md.2004):

> Under the circumstances presented here (a reduction-in-force dismissal), to establish a prima facie case of discrimination, [plaintiff] must show that: (1) he is a member of a protected class; (2) he was selected from a larger group for termination; (3) he was performing at a level substantially equivalent to the lowest level of those retained in the group; and (4) the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a level lower than that at which the plaintiff was performing. *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1315 (4th Cir. 1993).

*Id.* at 347 (citation omitted; alteration added); *and see id.* at 348 (noting that the fourth element of plaintiff's prima facie case in a reduction-in-force case may also be met by proving that there is evidence indicating that defendants did not treat age neutrally).[2]

**B.**

Of course, in this summary judgment context, the facts and all reasonable inferences that may be drawn from the evidence projected by the parties must be viewed in the light most favorable to Hildebrandt as the non-movant. *See* Fed. R.Civ.P. 56. Adherence to that principle compels the conclusion that summary judgment must be denied.

Plaintiff was first employed by W.R.Grace as a full-time employee in June 1971. In January 1975, he left W.R. Grace, returning five years later on January 2, 1980. As of September 2004, plaintiff worked as a Senior Development engineer assigned to the FCC Development Group. On September 8, 2004, just shy of plaintiff's 55th birthday, defendants terminated Hildebrandt.

The W.R. Grace pension plan (the "Plan") provides that vested employees such as plaintiff are eligible for early retirement upon turning 55 years of age. Moreover, the Plan provides that employees are awarded increased early retirement benefits for each successive year after they turn 55.

In April 2001, W.R. Grace declared bankruptcy, the effects of which reverberated throughout 2003 and 2004. Reductions in force became necessary. The Research and Development ("R & D") function of the Davison FCC Group saw "significant budget cutbacks." Gary Stokes, Vice President and General Man-

---

**2.** Plaintiff has purported to allege a "disparate impact" claim, but he does not seek class certification. "In the Fourth Circuit, an individual suing for disparate treatment discrimination generally may not rely on a disparate impact theory other than in a 'pattern and practice' or class action proceeding. *See Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 760–62 (4th Cir.1998), *vacated on other grounds,* 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999)." *Daugherty v. Genesis Health Ventures of Salisbury, Inc.,* 316 F.Supp.2d 262, 264 n. 4 (D.Md.2004). Summary judgment shall be granted to defendants as to the "disparate impact" claim.

ager of the Davison FCC business, determined that the group needed to move people into the Marketing function to improve results. Under company-wide dictates, the only way to increase the Marketing function (by two positions) was to reduce one or more other functions within the group by two positions. At the time, there were approximately 237 employees in the FCC Group and approximately 45 in the R & D function of the FCC Group. Of the three available functions (Marketing, Sales and R & D; Manufacturing was held harmless), Stokes chose to terminate employees from R & D, determining that it would be the "place where [there would be] ... the least relative impact."

Stokes instructed defendant Habib, the Director of Refining Catalysts Research and Development, to lay off two people within the R & D function. (Habib decided to lay off one person from Research and one from Development.) The Director of the Process Development section, defendant Rajagopalon, aided Habib in the process of selecting those to be laid off. The four "senior level" employees in R & D at the time (and their respective ages, at the time Hildebrandt was terminated) were: Mike Francis (34), Eric Lowenthal (39), Wilson Suarez (46), and plaintiff (54).

On September 8, 2004, Habib informed plaintiff that the FCC Development Group was being reduced by one senior professional employee and that plaintiff was the one selected for termination, to be effective November 30, 2004. Plaintiff would be 55 years old by then. There is no dispute that Hildebrandt was performing his job at a level that met W.R. Grace's expectations; but for the reduction in force, plaintiff would not have been terminated. Furthermore, as of the effective date of his termination, Hildebrandt was fully vested in his pension benefits provided under the Plan. Had plaintiff remained employed, he would have attained increased benefits under the Plan based on additional years of service credit for each successive year of employment, as well as early retirement benefits that were to increase each year after Hildebrandt reached the age of 55.

### C.

The gravamen of the dispute here is simple: Was plaintiff selected (in whole or *in part*) because of his age and consequent savings for the company (or division of the company) in salary and pension benefits? Or, was plaintiff selected because a rational, legitimate, non-discriminatory process identified him as the one to be fired? Manifestly, the precise criteria, as well as their manner of application, in the selection of employees to be terminated, are vigorously disputed by plaintiff. I am persuaded that, drawing all inferences in favor of plaintiff as the non-movant, the issue is not amenable to resolution on summary judgment.

Defendants describe the overarching criterion applied by Habib as "who was most likely to make the lowest contribution to the organization on a going-forward basis, *i.e.*, whose work would have the least value to the company." Thus, in a formulation that is most notable for its subjectivity and amorphousness, Habib and Rajagopalon in effect searched their collective memories regarding the past performance of those considered for layoff and undertook to identify the person who, in their "judgment," would make "the least contribution" in the future.

According to plaintiff, upon informing plaintiff his employment was being terminated, Habib told Hildebrandt that the criterion used was "who would help the group five to ten years out." There is a genuine dispute of fact as to whether Ha-

bib was explicitly instructed which employee pool he should select from when deciding which employees to terminate: "upper level professionals" (a smaller pool, which increased the risk of lay-off for plaintiff) or "professionals" (a larger pool, with a concomitant risk-reduction for plaintiff).[3] The record contains contradictory testimony on this issue. On the one hand, Habib testified that he inferred from his conversation with Stokes that Habib needed to limit the search to "upper level professionals." Stokes testified, however, that he did not instruct Habib to limit the search to two "upper level" professionals, but that he simply asked Habib to select two "professionals" from the R & D Group. Habib later testified that Stokes in fact *stated* it had to be "upper level professionals."

Significantly, the record contains more than a mere scintilla of direct evidence of discriminatory animus. That is, certain comments made by Habib during a conversation with Hildebrandt (arguably corroborated in contemporaneously-written notes) generate a genuine dispute of material fact as to whether Habib (or his superiors) harbored discriminatory animus that motivated the decision to terminate plaintiff. In September 2004, when Habib informed Hildebrandt that he was being terminated, Habib stated that because plaintiff would be "turning 55 next month" he could take early retirement, and added that he "fully expected" all of the "other senior people" to be "pushed out before retirement." Habib does not dispute the gist of the alleged statement; indeed, he seemed to include himself among the potential "victims." Nevertheless, the parties' jousting over its meaning and proper interpretation is indicative of a genuine dispute of material fact.

Habib admitted that, in coming to the decision to select Hildebrandt for termination, he did not review plaintiff's past work performance or "actually look[ ] at any documents," but instead "thought about each [engineer], kind of work they did, the way they worked, the presentations [he] had seen [and] relied primarily on [his] memory of their performance and comments [he] had heard over the years from other people."[4] This course of events bespeaks something other than a rational, non-discriminatory process.

Defendants do point with greater specificity to other criteria. For example, defendants allege that plaintiff's new product development projects comprised a weak link in his skills-repertoire and contributed to W.R. Grace's decision to terminate his employment. However, defendants cite scant evidence other than the oral testimony from the decision-makers in support of this contention, thus making credibility inferences fair fodder for the finder of fact. In fact, however, the 2001 performance review conducted by Rajagopalon indicates that Hildebrandt "carried out effective [d]evelopment work that has followed [r]esearch inventions." Rajagopalon assigned Hildebrandt two objectives to complete during 2002 that related to plaintiff's ex-

3. According to Stokes, by "professionals" he meant both senior professionals and professionals who might have just been hired. By restricting the selection to "professionals," Stokes meant to distinguish between professionals and technicians. *See* Stokes Dep. pp. 22–23, Ex. A.

4. *See* Habib Dep. Pp. 28–29, Ex. B. Plaintiff notes that Rajagopalon's testimony also revealed a failure to engage in meaningful consideration of Hildebrandt's performance, as compared to other engineers. When asked if he pulled personnel files to review them in connection with the decision making process, he replied in the negative. Instead, he described it as "more of managerial judgment taking into account the past performance and accomplishments and the strengths and weaknesses of the employees." *See* Rajagopalon Dep. pp. 25–26, Ex. G.

pertise in sieves. Additionally, in December 2003, less than one year prior to the decision to terminate plaintiff, Rajagopalon noted in a document created by him for management purposes that plaintiff was to be given a "greater role in new product development." Defendants insist that Hildebrandt's contention that he worked on new product development are false, and that "de-bottlenecking sieve production and providing a capital plan for producing Worms quality sieves" were *not* new product objectives. Absent any probative contemporary documentation to resolve this dispute, the dispute is for the jury.

Similarly, defendants allege that plaintiff did not meet his "stretch objectives" as regularly as other development engineers. When asked to identify which of these objectives Hildebrandt was supposed to achieve, but did not, Rajagopalon enumerated a four-part list that included the review and update of certain product information; scaling up "Pinnacle" process from Research; attempting to reduce "Crystallization" time; and determining the effect of "zeolite crystallite size variations on catalytic performance." Of these four objectives, according to plaintiff, the latter two were de-prioritized during the year and replaced by two *other* objectives which Hildebrandt successfully completed by the end of 2003.[5] Again, defendants provide no documentation indicating Hildebrandt was not meeting his "stretch objectives," nor do any of plaintiff's performance reviews contain information regarding same.[6]

## D.

▇▇▇ In sum, the dispute over the bona fides of defendant's selection of plaintiff for layoff as the poorest-performing engineer least likely to add value to the company in the future is not amenable to resolution by summary judgment on this record.[7] I am fully aware, of course, that an employee's "naked opinion" of his performance is not enough to establish a prima facie case of discrimination. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003), and that "[i]t is the perception of the decision maker which is relevant, not

---

5. The record is clear that de-prioritizing, changing, and modifying stretch objectives during the year is not uncommon. Habib agreed that stretch objectives often change and are commonly not met because project priorities change. *See* Habib Dep. pp. 49–50, Ex. B. Plaintiff is entitled to the obvious inference that his version of this particular dispute is probative and could reasonably be accepted by a fact finder.

6. Defendants also rely on the fact that plaintiff lacked an advanced degree, in contrast to those who were not terminated. While this is a criterion on which a jury could reasonably rest a finding in favor of defendants, it could equally easily reject the bona fides of this explanation and find that it is a *post hoc* explanation intended to shield discriminatory animus.

7. The fourth element of plaintiff's *prima facie* case may be met by proving either (1) the remaining senior engineers were performing at a level lower than Hildebrandt; or (2) that there is evidence indicating that defendants did not treat age neutrally. *Bello* at 348 (*citing Causey v. Balog*, 162 F.3d 795, 802 (4th Cir.1998)). Here, defendants insist that "[a]bsolutely no evidence has been produced that any members of the Research and Development function were performing at a level lower than [plaintiff's]." On the other hand, plaintiff cites Hildebrandt's receipt of a performance rating *higher* than at least two of the senior engineers (Suarez and Lowenthal), and the award of a greater merit salary increase. Moreover, age (and eligibility for retirement) arguably entered into the decision-making here. Accordingly, plaintiff has both (1) established a prima facie case under a pretext theory, proof of which, together with the impeachment of W.R. Grace's explanations for his termination, would permit a jury verdict in his favor, and (2) a direct case of discrimination, as well.

the self-assessment of the plaintiff." *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 960–61 (4th Cir.1996). But in the case at bar, in the absence of any probative documentary evidence establishing deficiencies in plaintiff's past performance, as a matter of law, plaintiff's historical account of his performance is not properly viewed as competing *opinion* testimony, but may be accepted by a fact finder as *first hand fact testimony based on personal knowledge,* every bit as much as the decision-maker's *search of his recollection of plaintiff's performance and oral testimony about that performance* may be accepted as "fact." In short, in the time-honored phrase, this is a "credibility case" and defendant is not entitled to summary judgment.

**E.**

■ What has been said above largely disposes of the request for summary judgment as to plaintiff's failure-to-hire claims. Logically, if a reasonable juror could reasonably find that plaintiff was terminated in whole or *in part* on account of his age, such a juror could reasonably find that, W.R. Grace having "pushed out" plaintiff, it also wished to "keep him out," on the same impermissible basis. Indeed, plaintiff offers evidence to suggest that defendants deliberately kept him from even *applying* for certain jobs within the company after he was terminated, despite the fact that he was qualified.

Regarding the December 22, 2004, Silica Manufacturing Group position, the focus of the job was on the sieves operation within that Group. Plaintiff is documented to have extensive expertise in that area. Had he not been denied the opportunity to interview, plaintiff would have been more than qualified for this position. The record evidentiary support that a directive came from the human resources depart-ment to Doug Illioff, when Illioff inquired about interviewing Hildebrandt for the position, "[d]o not do that." This evidence is highly probative of a discriminatory animus at W.R. Grace in respect to all of the ADEA claims.

Similarly, Hildebrandt was denied consideration for an opening in March 2005, in the Polyolefin Manufacturing Group. Defendants allege that the reason for this was because it was "not a usual business practice to rehire people who have been terminated (and receive severance) as regular employees." The record is bereft of any evidence that such a policy exists in writing. Moreover, the former head of another division specifically failed to recall any such practice. Finally, Dean Denton, an engineer in the Polyolefin Group who questioned the legitimacy of defendants' decision not to consider Hildebrandt for a position, offers testimony supporting an inference that, for impermissible reasons, Hildebrandt's rehiring was "not going to be happening."

Viewing the evidence in the light most favorable to plaintiff as the non-movant, the failure-to-hire claims are not amenable to resolution on summary judgment.

**III.**

■ ERISA declares it unlawful for an employer to discharge ... or discriminate against a participant ... for the purpose of interfering with the attainment of any right to which such participant may become entitled. 29 U.S.C. § 1140. The Fourth Circuit has made it clear that not only does ERISA prohibit an employer from interfering with an employee's right to become vested in pension benefits, but it also prohibits an employer from taking action against a fully vested employee "to prevent accrual of additional benefits." *Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 236 (4th Cir.1991).

■ To prove a *prima facie* case under § 1140, *Conkwright* held that a plaintiff must prove that preventing accrual of additional benefits "was a *motivating factor* in the firing decision." *Id.* at 238 (emphasis added). Once a *prima face* case is demonstrated, the *McDonnell Douglas* scheme of proof is applied to establish whether the employer acted with specific intent to interfere with plaintiff's right to additional benefits. *Id.* at 238–39.

■ Here, the temporal proximity of the decision to select Hildebrandt for termination just one month prior to his 55th birthday and becoming eligible for retirement, after 24 years of successful employment with W.R. Grace, creates a sufficient question of fact as to whether age was a motivating factor in the decision to terminate plaintiff's employment. It is important to view the timing of defendants' decision against evidence in the record that Hildebrandt was performing at levels above legitimate expectations and that there is at least sufficient dispute that he was performing at levels superior to those of other similarly situated engineers. Plaintiff received excellent performance reviews the years leading up to his termination, received a memo of accolade from Rajagopalon concerning Hildebrandt's working extra hours and going the extra mile to resolve a problem that arose in a manufacturing plant, and in 2003 was awarded a merit rating of "Excellent" (versus his counterparts, all of whom received only "Good" ratings).

Plaintiff alleges that the decision to select him for termination was motivated by the intent to prevent Hildebrandt from accruing these additional benefits under the Plan: benefits which, based on the Plan, plaintiff would earn each successive year he was employed past 55. In support, plaintiff cites Habib's allegedly discriminatory comment that older employees be "pushed out before retirement," and the obvious temporal proximity between plaintiff's turning 55 and his employment being terminated just one month shy of his 55th birthday.

Importantly, as to the other three employees considered (Francis, Suarez and Lowenthal), each was at a minimum of 10 years out before they turned 55 and began attaining these same benefits under the Plan. *See Pennington v. Western Atlas, Inc.*, 202 F.3d 902 (6th Cir.2000) (holding that plaintiff proved a *prima facie* case on evidence that employer terminated employee at age 59 to avoid paying the additional benefit she would accrue until full retirement at age 65).

Defendants cite *Byington v. Vega Biotechnologies, Inc.*, 869 F.Supp. 338, 346 (D.Md.1994), for the proposition that in order to prevail on an interference with pension benefits claim, a plaintiff must prove that the employer "acted with the specific intent to interfere with [plaintiff's] protected rights." In support of their contention that plaintiff failed to meet this requirement, however, all defendants cite is testimony that the precise amount W.R. Grace "saved" by terminating Hildebrandt was minuscule, and therefore could not possibly constitute a motivation to terminate him. Had Hildebrandt's employment continued through January 1, 2005, W.R. Grace's minimum required contribution to the Plan would have increased by $1,352, an amount defendants cite as "hardly a financial motivation" to terminate an employee.

In light of the record as a whole, and assuming this claim would be tried to the court and not to the jury, there will be time enough, with jury fact finding as a backdrop, fully to assess this equitable claim. Accordingly, summary judgment on the ERISA claim shall be denied.

## IV.

For the reasons set forth above, the motion for summary judgment is hereby GRANTED IN PART AND DENIED IN PART.